John R. Stanley, Respondent, v. Franco-American Ferment Company, Appellant.

(Supreme Court, Appellate Term, First Department, November, 1916.)

Corporations — negotiable instruments — interest at rate of 130 per cent per annum paid for loan — estoppel — contracts — usury.

Where one who had been a director of a corporation purchases its antedated notes from the payee for less than their face value and without inquiry though the maker had its office and place of business in the city where he lived, he is not a *bona fide* holder in due course.

The president and general manager of a business corporation has no apparent authority to pay interest at the rate of 130 per cent per annum for a loan to the corporation and one with whom he so contracts is put upon inquiry as to his authority.

One claiming that the corporation by its course of dealing was estopped to deny the authority of its president must prove that he relied upon such course of dealing.

Though the corporation had received the benefit of the loan it could repudiate the agreement made by its president as to interest but was liable for interest at the legal rate as upon *quantum meruit*.

26

Supreme Court, Appellate Term, November, 1916.. [Vol. 97.

Appeals by defendant from two judgments of the Municipal Court of the city of New York, borough of Manhattan, seventh district.

Rushmore, Bisbee & Stern (George N. Hamlin, of counsel), for appellant.

Myer Nussbaum, for respondent.

Shearn, J. These are separate appeals from two judgments in favor of the plaintiff, one for $759.43, and the other for $977.49, in two actions tried as one. One action is brought upon four promissory notes, for which judgment was rendered in favor of the plaintiff, and the other upon five promissory notes, the court allowing judgment upon only four and finding that the fifth note had failed for lack of consideration.

The defendant is a domestic corporation. In 1914, Bates, then its president and general manager, made an arrangement with Reilly, the payee of all of the notes, to borrow money from him from time to time at the rate of two and one-half per cent per week, or one hundred and thirty per cent per annum. During the period of the transactions Reilly loaned the corporation altogether over $30,000. When the loans were made checks of the corporation were given to Reilly. The checks were not paid when due, but from week to week two and one-half per cent in cash was paid to Reilly upon the loans. Ultimately demand notes were substituted for the checks. The notes were antedated and all of the. interest was paid upon the loans prior to the giving of the notes, plaintiff claims. The plaintiff acquired the notes in suit from the payee February 24, 1916. The most recent date of any of these eight notes is July 3, 1915. The ninth note upon which judgment was ren-

dered for the defendant bears date September 23, 1915, or five months before plaintiff acquired it. The aggregate of all the notes was $1,817.50, and plaintiff paid Reilly for the notes $500. Plaintiff is a resident of the borough of Manhattan, city of New York, and knew at the time he took these notes without inquiry that the defendant, of which he had been a director, had its office and place of business in that borough. Under the circumstances the plaintiff was not a *bona fide* holder in due course. *Herrick* v. *Woolverton,* 41 N. Y. 582; *Losee* v. *Dunkin,* 7 Johns. 70; *Cise* v. *Cunningham,* 1 Cow. 397; *Becker* v. *Hart,* 135 App. Div. 789; *Vosburgh* v. *Diefendorf,* 119 N. Y. 357.

The defendant contends that neither the president nor the directors of the defendant had any authority to contract to pay Reilly interest at the rate of two and one-half per cent per week, or one hundred and thirty per cent per annum, and that, consequently, any sums paid to Reilly in excess of the reasonable rate of interest must be applied in part payment of the principal of the loans, if such payments were made, as claimed by the plaintiff, before the demand notes were given; or, if the payments were made after the delivery of the demand notes, they must, also, be regarded as payments in reduction of the notes, since the demand notes, not specifying that they are payable with interest, bear no interest until after demand for payment. No express authority in Bates to contract to pay such a rate of interest was shown. If the terms of a contract entered into on behalf of a corporation by its officers are extraordinary or unusual, such as are not ordinarily made by the president or other officer in the ordinary course of the transaction of the current business of the corporation, the party contracting with the officer is put upon inquiry as to his authority. *Western*

*National Bank* v. *Armstrong,* 152 U. S. 351; *Lyon* v.
*West Side Transfer Co.,* 132 App. Div. 777; *Gause* v.
*Commonwealth Trust Co.,* 124 id. 438, 451; affd., 196
N. Y. 134. Certainly the president and general mana-
ger has no apparent authority to fix *any* rate of inter-
est that he pleases for a loan to the corporation.
Where the president of a railroad company made a
contract on its behalf with an individual, whereby the
latter was to procure a loan of $150,000 for the com-
pany in consideration of receiving ten per cent of that
sum, the Circuit Court of the United States held:
" The transaction which it is claimed the corporation
employed the plaintiff to make was an extraordinary
one, and quite beyond the sphere of its ordinary busi-
ness and the customary scope of the agency of the
president of such a corporation." *Tobin* v. *Roaring
Creek & C. R. Co.,* 86 Fed. Rep. 100. So, in the case of
*Lyon* v. *West Side Transfer Co., supra,* where the
president and treasurer of a corporation which was
engaged in the business of renting offices and col-
lecting rents from the property, which it owned, made
a contract with the plaintiff to obtain a purchaser of
the property and agreed to pay the plaintiff all above
the sum of $78,500 received as the purchase money,
the Appellate Division of this department held that
the contract was not within the apparent scope of the
authority of the president and treasurer. A contract
to pay interest at the rate of one hundred and thirty
per cent per annum, a rate of interest so extraordi-
nary that it could not be within the usual course of the
business of the corporation, the sums borrowed
amounting to as much as $30,000, cannot be held to be
within the apparent scope of the authority of the
president or general manager, having charge of the
current business.

Even if it should be held that the board of directors

had power to authorize this unconscionable contract, there is not only nothing in the record to show that they ever did authorize it but there is also no evidence of ratification, for it does not appear that the directors knew or that the books of the corporation showed either the rate of interest or the amount of interest that was being paid upon the Reilly loans.

However, the plaintiff contends that the defendant is estopped by its course of dealing from denying authority in the president or board of directors. But, in order to estop the defendant, the plaintiff must show that Reilly relied upon the course of dealing. In this case plaintiff does not show that Reilly had any knowledge of dealings of the corporation with any other persons than himself nor does he show that in Reilly's own case Reilly relied on the previous conduct of Bates. There could be no estoppel without such proof. *Jacobus* v. *Jamestown Mantle Co.,* 211 N. Y. 154, 162.

It follows that the sum so paid as interest upon the loans to the extent that they exceeded six per cent per annum should be applied as payments on account of the principal. This results whether the sums paid as interest were paid before the delivery of these demand notes, as plaintiff contends, or whether some payments were paid before or some after. Assuming that the payments were made before the delivery of the notes, the contention that the defendant, having received the benefit of the loans, cannot repudiate the agreement with respect to the rate of interest, is not sound. *Lyon* v. *West Side Transfer Co., supra.* In the *Lyon* case the plaintiff had rendered services, at an agreed rate of compensation, which it was beyond the scope of the authority, express or implied, of the president of the corporation to agree to pay. It was held that the corporation had the right to repudiate so much of the

contract as related to the rate of compensation, but, having received the benefit of the services rendered by the plaintiff, it was liable to respond in that same action to the plaintiff as upon the *quantum meruit,* although the plaintiff had brought the action for the contract rate. This principle that the plaintiff may recover as upon a *quantum meruit* is recognized in *Camacho* v. *Hamilton Bank Note & Eng. Co.,* 2 App. Div. 369. The moneys paid on account of these transactions from time to time should be applied in the same way that the law would apply them had there been a contract for interest, without mentioning any specific rate. That is to say, each payment should first be applied to discharge interest to the date of the note, at the rate of six per cent per annum, and the balance should be applied on the principal. Of course, where payments of interest were made after the delivery of the notes, they could only be regarded as payments on account of principal, because the notes were not entitled to draw interest, for they were demand notes specifying no interest and payment of these notes was not demanded until February 25, 1916. Accordingly, the judgment in appeal No. 56, entered April 22, 1916, is modified by deducting therefrom the sum of $297.98, making the judgment as modified $411.04 damages and appropriate costs in the court below, and the judgment in appeal No. 57, entered April 22, 1916, is modified by deducting therefrom $242.57, making the judgment as modified $674.51 damages and appropriate costs in the court below and as thus modified the judgments are affirmed, with $15 costs to appellant in each case, costs to be set off.

GUY and BIJUR, JJ., concur.

Judgments modified, and, as so modified, affirmed, with costs.