■ WEST VIEW HILLS, INC., Respondent, v. LIZAU REALTY CORP. et al., Appellants.— Appeal (1) from an order dated December 13, 1957 denying a motion to set aside the service of the summons and to dismiss the complaint, and (2) from an order dated January 13, 1958 denying a motion to reargue said motion. The motion to set aside the summons was made on the ground that one Zaubler, respondent's president, without consultation with, or the approval of, his fellow officers, directors and stockholders, had no authority to bring suit in the name of the corporation, which had been generally inactive for years, against his fellow officers and directors and against a corporation wholly owned by the individual appellants for alleged acts committed during a period when respondent's president actively performed his duties as president of both the respondent and appellant corporations. Order dated December 13, 1957 affirmed, with $10 costs and disbursements. (See, in addition to the authority cited by the Special Term, *Matter of Paloma Frocks [Shamokin],* 3 N Y 2d 572, 575, 576; *Twyeffort* v. *Unexcelled Mfg. Co.,* 263 N. Y. 6, 9; *Hardin* v. *Morgan Lithograph Co.,* 247 N. Y. 332, 338; *Tidy House Paper Corp. of N. Y.* v. *Adlman,* 4 A D 2d 709.) Appeal from order dated January 13, 1958 dismissed, without costs. An appeal does not lie from an order denying reargument of a motion (*Matter of Leeds* v. *Fried & Sons,* 281 App. Div. 851). Nolan, P. J., Beldock, Hallinan and Kleinfeld, JJ., concur; Wenzel, J., concurs in the dismissal of the appeal from the order dated January 13, 1958 but dissents from the affirmance of the order dated December 13, 1957 and votes to reverse that order and to grant the motion, with the following memorandum: Respondent is a Connecticut corporation which did not do business in New York. Neither side asserts that Connecticut law differs from ours in any respect which would be

important here (see, e.g., *Matter of Paloma Frocks* [*Shamokin*], 3 N Y 2d 572, 576). When the action was instituted, one Zaubler was respondent's president and the individual appellants were secretary and treasurer, respectively. The three individuals comprised the board of directors of respondent and each of them owns one third of respondent's stock. Respondent has been generally inactive for years. The three individuals were formerly the officers, directors and equal stockholders of the appellant corporation, with Zaubler as president thereof. In October, 1956 the three individuals entered into an agreement whereby Zaubler sold his interest in various active corporations, including the appellant corporation, to the individual appellants. Those individual appellants now own and control the appellant corporation. The action was instituted in May, 1957. This case is distinguishable from those cases in which there were equal divisions in the boards of directors between two factions or parties and which dealt with the power, actual, presumptive or implied, of the respective presidents or executive heads of the corporations to institute actions in the names of the corporations against "insiders" or "outsiders" (see, e.g., *Sterling Inds.* v. *Ball Bearing Pen Corp.*, 298 N. Y. 483; *Rothman & Schneider* v. *Beckerman*, 2 N Y 2d 493) and to enforce contracts previously executed by the plaintiff corporations (see, e.g., *Matter of Paloma Frock* [*Shamokin*], 3 N Y 2d 572, *supra*). There was no equal division in respondent's board of directors and consequently no deadlock therein. The situation in its board of directors was not such that, although a motion by the president for authorization to commence the action would not have been adopted by a majority vote of the board, a motion to annul the action of the president after he had the action instituted without prior approval of the board would not have been adopted by a majority vote. The individual appellants who comprise two thirds of respondent's board of directors and own two thirds of its stock are of course opposed to the maintenance of the action. It is obvious that, if respondent's president, prior to the commencement of the action, had requested authorization from the board to commence the action, his motion would have been defeated by a vote of two to one. It is also obvious that, if a meeting of the board had been properly called after the action was instituted, a resolution would have been adopted by a vote of two to one directing the discontinuance, withdrawal or annulment of the action. Only a few of respondent's by-laws are referred to or quoted. One of them provides that the president "shall appoint and remove, employ and discharge, and fix the compensation of all servants, agents, employees and clerks of the Corporation other than the duly appointed officers, subject to the approval of the Board of Directors." We shall asume that, during the period of activity of respondent, its president, in his general powers as president and through the course of conduct by the individuals in the operation and management of respondent, had the power to retain attorneys in Connecticut on behalf of respondent and to institute routine and general actions in respondent's name. But, from such few of respondent's by-laws as are contained in the record, the course of conduct of the individuals and respondent and the general powers of a corporation's president, it should not be held that respondent's president, years after respondent had ceased to be generally active, had the authority, actual, presumptive or implied, to retain a New York attorney in behalf of respondent and, in the name of respondent, institute this action against the majority of respondent's stockholders and directors and against a corporation owned and controlled by the individual appellants. Basically, the action was grounded on alleged facts which took place while respondent's president was president and a one-third stockholder of the appellant corporation. Respondent's president had no presumptive or implied authority to retain

the New York attorney and institute litigation in the name of respondent so far outside the ordinary course of respondent's general and legal business and so extraordinary (see, e.g., 2 Fletcher's Cyclopedia Corporations [Perm. ed.], § 592; 19 C.J.S., Corporations, § 1051, p. 559; *Stanley* v. *Franco-Amer. Ferment Co.*, 97 Misc. 401).