STERLING INDUSTRIES, INC., Respondent, *v.* BALL BEARING PEN
CORPORATION et al., Appellants et al., Defendants.

Argued November 16, 1948; decided March 3, 1949.

*Bernard A. Saslow, Abraham N. Geller* and *Philip Kazon* for appellants. I. The Appellate Division erred in holding that the action of the president in instituting this action is supported by the doctrine of prima facie authority. The authority to institute any action on behalf of the corporation is vested by law and agreement of the parties in plaintiff's board of directors. (*McIlrath* v. *Waterbury & Sons Co.*, 193 App. Div. 491; *McQuade* v. *Stoneham*, 263 N. Y. 323; *Long Park, Inc.*, v. *Trenton-New Brunswick Theatres Co.*, 297 N. Y. 174; *People ex rel. Manice* v. *Powell*, 201 N. Y. 194; *United Copper Securities Co.* v. *Amalgamated Copper Co.*, 244 U. S. 261; *Koral* v. *Savory, Inc.*, 276 N. Y. 215; *Orr & Co.* v. *Fireman's Fund Ins. Co.*, 141 Misc. 330; *Central Opera House Realty Corp.* v. *Verschleiser*, N. Y. L. J., April 20, 1946, p. 1548; *American Water Works Co. of N. J.* v. *Venner*, 63 Hun. 632, 18 N. Y. S. 379; *Ashuelot Mfg. Co.* v. *Marsh*, 1 Cush. 507 [Mass.]; *Bridgeport Sav. Bank* v. *Eldridge*, 28 Conn. 556; *Jeanerette Rice & Milling Co.* v. *Durocher*, 123 La. 160.) II. The doctrine of prima facie or presumptive authority has no application in this case. (*Powers* v. *Schlicht Heat, Light & Power Co.*, 23 App. Div. 380, 165 N. Y. 662; *Schwartz* v. *United Merchants & Manufacturers, Inc.*, 72 F. 2d 256; *Hardin* v. *Morgan Lithograph Co.*, 247 N. Y. 332; *Holmes* v. *Willard*, 125 N. Y. 75.) III. Even if it be assumed that the president of plaintiff corporation could have had presumptive authority to institute the action, that presumption has been conclusively rebutted. (*Powers* v. *Schlicht Heat, Light & Power Co.*, 23 App. Div. 380, 165 N. Y. 662; *Bussing* v. *Lowell Film Productions, Inc.*, 233 App. Div. 493, 259 N. Y. 593; *Twyeffort* v. *Unexcelled Mfg. Co.*, 263 N. Y. 6; *Oakes* v. *Cattaraugus Water Co.*, 143 N. Y. 430.) IV. The relationship between the directors opposing the action and defendants, and the bare assertion that this suit is vital to the corporate interest are no basis for the Appellate Division's departure from clearly established principles of law. (*Blaustein* v. *Pan American Petroleum & Transport Co.*, 263 App. Div. 97, 293 N. Y. 281; *Koch* v. *Estes*, 146 Misc. 249, 240 App. Div. 829, 264 N. Y. 480; *J. C. F. Holding Corp.* v. *General Gas & Elec. Corp.*, 181 Misc. 283, 267 App. Div. 863; *Espach* v. *Nassau & Suffolk Lighting Co.*, 293 N. Y. 463; *Everett* v. *Phillips*, 288 N. Y. 227; *Stock Corporation Law*, § 60; *Matter of Automotive Manufacturers Assn., Inc.*, 120 Misc. 405.) V. The contention that

this action is vital to the interests of plaintiff corporation provides no justification for the institution of this action. (*Elblum Holdng Corp.* v. *Mintz,* 120 N. J. L. 604; *Potter* v. *New York Infant Asylum,* 44 Hun 367, 118 N. Y. 684; *Citizens Nat. Bank of Kingman* v. *Berry,* 53 Kan. 696; *Beebe* v. *Beebe,* 64 N. J. L. 497.) VI. The existence of a deadlock in the board of directors creates no extraordinary powers in the corporate president. (*Long Park, Inc.,* v. *Trenton-New Brunswick Theatres Co.,* 297 N. Y. 174; *Benintendi* v. *Kenton Hotel, Inc.,* 294 N. Y. 112; *McQuade* v. *Stoneham,* 263 N. Y. 323; *Douglas Development Corp.* v. *Carillo,* 64 N. Y. S. 2d. 747; *Cogwill Land Co.* v. *Coughlan,* 245 App. Div. 759; *Koral* v. *Savory, Inc.,* 276 N. Y. 215; *Earl* v. *Brewer,* 248 App. Div. 314, 273 N. Y. 669; *Pueblo of Santa Rosa* v. *Fall,* 273 U. S. 315; *Orr & Co.* v. *Fireman's Fund Ins. Co.,* 141 Misc. 330.)

*David P. Siegel* for respondent. I. Under the unusual circumstances of this case, the summons and complaint and the service thereof upon the moving defendants was authorized in law and should not be vacated. II. The Appellate Division correctly applied the doctrine of prima facie or presumptive authority in the president of a corporation to institute an action in behalf of the corporation to this case. (*Kenton Furnace R. R. & Mfg. Co.* v. *McAlpin,* 5 F. 737; *Hardin* v. *Morgan Lithograph Co.,* 247 N. Y. 332; *Merrill* v. *Consumers' Coal Co.,* 114 N. Y. 216; *Potter* v. *New York Infant Asylum,* 44 Hun 367, 118 N. Y. 684; *American Ins. Co.* v. *Oakley,* 9 Paige Ch. 496; *Mumford* v. *Hawkins,* 5 Denio 355; *Beebe* v. *Beebe,* 64 N. J. L. 497; *Twyeffort* v. *Unexcelled Mfg. Co.,* 263 N. Y. 6.) III. Where the stock interests and the directors are evenly divided and there is a deadlock and emergency, the president of a corporation has a right to bring and prosecute a suit necessary for the preservation of vital corporate interests. (*Elblum Holding Corp.* v. *Mintz,* 120 N. J. L. 604; *Best-Site Associates, Inc.,* v. *Ventrice,* 245 App. Div. 758; *Warwick Sportswear Co.* v. *Simons,* 13 N. Y. S. 2d 321; *Matter of Bernheimer,* 43 N. Y. S. 2d 300, 266 App. Div. 868.) IV. The relationship between the dissenting directors and the defendants and their adverse, hostile and conflicting interests disqualified them from voting on the motion to authorize institution of this action, and from acting in a matter affecting those interests. (*Brooklyn Heights R. R. Co.* v. *Brooklyn City R. R. Co.,* 151 App.

Div. 465; *Pink* v. *Title Guar. & Trust Co.*, 164 Misc. 128; *Singer* v. *Carlisle*, 26 N. Y. S. 2d 172, 261 App. Div. 897; *Everett* v. *Phillips*, 288 N. Y. 227; *United Copper Securities Co.* v. *Amalgamated Copper Co.*, 244 U. S. 261; *Koral* v. *Savory, Inc.*, 276 N. Y. 215; *Munson* v. *Syracuse, Geneva & Corning R. R. Co.*, 103 N. Y. 58; *Billings* v. *Shaw*, 209 N. Y. 265.)

CONWAY, J. The plaintiff corporation was formed in 1946, by two groups of men who were to share equally in its control. The first group were representatives of the defendant Ball Bearing Pen Corporation (hereinafter referred to as Pen Co.). The other group consisted of one Middleman, later elected president of plaintiff, and others named Shindel and Golub. Each group was represented by its own counsel who participated in the organization. The charter and by-laws were finally adopted after consultation between counsel for both groups. In order that the control of the corporation might be shared equally by both groups, the common stock was divided into two classes, Class A and Class B, having equal voting rights. The charter provided that the holders of each class of stock had the right to elect one half of the directors.

The by-laws provided in section 1 of article II: " The affairs and business of this corporation shall be managed by a Board of Directors composed of four members   *   *   *."

The Class A common stock was to be held by the Middleman-Shindel group and the Class B common stock by the representatives of those who controlled Pen Co. Two representatives of Pen Co. were charter members of the board of directors of plaintiff and each owned twenty shares of Class B common stock. Middleman and Shindel became the other two directors and each owned twenty shares of Class A common stock. Those eighty shares constituted 100% of the stock of the plaintiff which is issued and outstanding.

As is understandable, in view of the manner in which the plaintiff was formed, the respective counsel for the two groups provided in paragraph 16 of its charter as follows: " No contract or other transaction between the corporation and any other corporation shall be affected or invalidated by the fact that one or more of the Directors of this corporation is or are interested in or is a Director or officer or are Directors or officers of such

other corporations, and any Director or Directors, individually or jointly may be a party to or parties to, or may be interested in any contract or transaction of this corporation, or in which this corporation is interested, and no contract, act or transaction of this corporation with any person or persons, firms or corporations, shall be affected or invalidated by the fact that any director or directors of the corporation is a party to or are parties to, or interested in such contract, act or transaction, or in any way connected with such person or persons, firm or association; and each and every person who may become a director of this corporation is hereby relieved from any liability that may otherwise exist from contracting with the corporation for the benefit of himself or any firm, association, or corporation in which he may be in any wise interested.''

The by-laws of the corporation, in addition to providing that the affairs and business of the corporation were to be managed by a board of directors of four members and that a majority of the board were to constitute a quorum, contained the following provision: '' Section 9. Voting. At all meetings of the Board of Directors, *each director shall have one vote,* irrespective of the number of shares of stock that he may hold. *The act of a majority of the entire Board of Directors shall constitute the act of the Board of Directors.*'' (Emphasis supplied.)

The by-laws which set forth the powers and duties of the officers contain no reference to any authority on the part of the president or any other officer to institute litigation.

On February 28, 1947, the *president* of plaintiff corporation gave notice of a *special meeting* of the board of directors to be held on March 12, 1947, '' to consider and act upon the following matters:

'' 1. * * *

'' 2. The report of the President in respect to the status of the contractual and other business relationship between this corporation and Ball Bearing Pen Corporation.

'' 3. To consider and act upon a breach of contract on the part of Ball Bearing Pen Corporation.

'' 4. *To consider the advisability of instituting suit* or other proceedings *against the Ball Bearing Pen Corporation for breach of the said contract.*

'' 5. * * *.'' (Emphasis supplied.)

Middleman, the president, presided over the meeting held on the date appointed. During the course of the meeting he moved that the corporation bring an action against Pen Co. for breach of contract and an accounting. The motion was put to a vote. Two directors voted in favor of the motion and two voted in opposition. The president then stated that in view of the tie vote, the motion had failed to be carried. He then declared the meeting at an end. No further meetings of the board were held prior to the institution of this action which is one at law.

The complaint, verified by Middleman, sets forth two causes of action. The first is for breach of contract under which it is alleged that Pen Co. agreed to manufacture ball point fountain pens and " to make the plaintiff the exclusive agency for the sale " of all such pens for a period of one year. It then alleged that two and one-half months later, after plaintiff had spent a substantial sum of money for advertising and promoting the sale of such pens and had obtained orders for upwards of 300,000 pens, Pen Co. breached the contract, refused to deliver any further pens to plaintiff or to fill its orders and sold directly and through others without making payment to plaintiff of the sums agreed upon in the event of such sales directly or through others than plaintiff. The second cause of action alleged that the individual defendants induced Pen Co. to break the contract which is the subject of the first cause of action.

The Appellate Division, by a sharply divided court, reversed an order of Special Term vacating the service of the summons and complaint upon the ground that the plaintiff had not authorized the institution or prosecution of this action and denied the motion. The Appellate Division thereupon granted leave to appeal and certified the following question: " On the facts appearing in the record, should the summons and complaint herein and the service thereof upon the moving defendants have been vacated and set aside upon the ground that the plaintiff corporation did not authorize the institution or prosecution of this action? "

We assume that all questions of fact were determined by the Appellate Division in favor of respondent. (Civ. Prac. Act, § 603.) The question presented for our consideration, therefore, is whether a president of a corporation may institute an action under the circumstances disclosed on this record after

he has asked his board of directors for permission so to do and it has been refused. We think he may not and that the certified question must be answered in the affirmative.

First, there is no question here of any presumptive or prima facie authority in the president of a corporation qua president to institute litigation and engage counsel therefor. (See, *Koral* v. *Savory, Inc.*, 276 N. Y. 215, 217; *United Copper Securities Co.* v. *Amalgamated Copper Co.*, 244 U. S. 261, 263; *Twyeffort* v. *Unexcelled Mfg. Co.*, 263 N. Y. 6; *Potter* v. *New York Infant Asylum*, 44 Hun 367; 19 C. J. S., Corporations, § 1051, pp. 559, 560; General Corporation Law, § 27; Stock Corporation Law, § 60.) Nor is there question of apparent authority, since we consider here no rights of outsiders or third parties, but only those of organizers of plaintiff corporation and representatives of Pen Co. Any actual or implied authority which Middleman may have had as president to commence this action was terminated when a majority of the board of directors at the special meeting refused to sanction it. Section 27 of the General Corporation Law provides in part: '' The business of a corporation shall be managed by its board of directors * * *.'' Plaintiff's by-laws provided in section 1 of article II, as we have seen (*supra*, p. 487), for the management of its affairs and business by its board of directors. Section 60 of the Stock Corporation Law provides in part: '' The directors of a stock corporation may appoint or elect from their number a president, and may appoint or elect one or more vice-presidents, a secretary, a treasurer, and other officers, agents and employees, *who shall respectively have such powers and perform such duties in the management of the property and affairs of the corporation, subject to the control of the directors, as may be prescribed by them or in the by-laws.* * * *'' (Emphasis supplied.) Thus in *Koral* v. *Savory, Inc.* (*supra*, p. 217), we quoted from *United Copper Securities Co.* v. *Amalgamated Copper Co.* (*supra*): '' * * * the question whether the corporation should ' seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management *and is left to the discretion of the directors,* in the absence of instruction by vote of the stockholders.' '' (Emphasis supplied.)

Next, it is urged that the two directors who were nominated by Pen Co. were disqualified to vote at the meeting of March 12, 1947, by interest in Pen Co. To that there are three answers. (1) The president Middleman called the meeting of March 12th by notice dated February 28, 1947. On that latter date the alleged breach of contract had already occurred, yet Middleman treated his other three codirectors as fully qualified and asked their vote to authorize him to institute this action. He and they were charter members of the board which had been constituted purposefully to his knowledge so as to have two representatives of Pen Co. (2) Not only is there a presumption that those two directors acted properly and in the interest of plaintiff but they have not been made parties defendant here and no relief has been asked against them. There are no facts alleged indicating that they are not acting in the best interests of plaintiff despite the fact that they have submitted affidavits deposing that in their opinion " this suit is not in the best interests of plaintiff corporation ". (3) The whole purpose of counsel severally representing the two groups which formed plaintiff was to see to it by the insertion of paragraph 16 (*supra*, pp. 487–488) in the charter that the interest of its directors in another contracting corporation should not constitute disqualification to vote by reason of interest in the contract or transaction then under consideration.

The circumstances of the organization of plaintiff corporation indicate that the parties intended that the corporation should be managed by its board of directors and that the board should take no affirmative action if not sanctioned by a majority. That is the arrangement the parties intended and there is no basis on which to hold such an arrangement illegal. Had the Legislature intended to eliminate the problem of a deadlock it could have done so by the simple expedient of requiring an odd number of directors. Instead, apparently realizing the desire for equal control in some closely held corporations, it has continued to permit the election of a board of directors with an even numbers of directors. The fact that a deadlock may result does not necessarily mean that the present law is inadequate and that it should be remedied by the approval of presidential power where none in fact exists — thus disregarding fundamental rules of agency law. There is available to the group

in favor of instituting suit here the more appropriate remedy of a stockholder's derivative action which we shall discuss more fully below.

We have consistently held that section 27 of the General Corporation Law, which provides that the business of a corporation shall be managed by its board of directors, cannot be circumvented. (*Long Park, Inc.,* v. *Trenton-New Brunswick Theatres Co.,* 297 N. Y. 174; *Benintendi* v. *Kenton Hotel, Inc.,* 294 N. Y. 112; *McQuade* v. *Stoneham,* 263 N. Y. 323; *Manson* v. *Curtis,* 223 N. Y. 313.) The decision below in effect amends section 27 to read that the corporation shall be managed by its board of directors, *except in the case of deadlock when it shall be managed by any director who happens to be president.*

Finally, it is urged that the litigation presents an emergency or a critical situation. The Appellate Division did not rest its decision on that basis and properly so. It went no further than to say that the suit " vitally concerns the plaintiff and affects its interests in respect to a substantial asset. We do not think that the merits or sufficiency of the factual basis for bringing the action should be considered at this time." (273 App. Div. 464.)

No evidentiary facts are alleged to indicate that a crisis is at hand or that immediate or vital injury threatens plaintiff. Two of the four *affidavits* submitted by plaintiff contain the following single sentence: " This suit is critical and vital to the interests of the corporation and a recovery would redound to the benefit of the corporation." One of the affidavits contains the following two sentences:

" This suit against the corporate and personal defendants is vital and critical.

" The defendants by their action and conduct sought to destroy the very existence of this corporation."

Those three sentences are the only allegations that this action is at all vital or critical to the corporate interests. Clearly they are conclusory and not factual. (*Kalmanash* v. *Smith,* 291 N. Y. 142, 153, 154, and cases cited.) Lacking such factual allegations, the lower court cases in this and another State cited by plaintiff are inapposite. Moreover, those cases presented neither a request by a president and a refusal by a board of directors to institute action nor a charter provision such as paragraph

16 (*supra*). While the complaint has been incorporated by reference into the affidavits, it discloses no urgency on its face. It states that plaintiff " *was and still is* engaged in the business of selling and distributing articles of general merchandise " (emphasis supplied), and while it alleges an exclusive agency to sell the pens of the corporate defendant, and that the contract has been breached, no *facts* are alleged to indicate that its corporate existence is threatened or that its business will not continue normally.

Plaintiff has an appropriate remedy by action in which it may obtain any necessary provisional remedy as well as prompt trial. That is by a stockholder's derivative action. Plaintiff urges that in an action at law it will be entitled to a jury trial. There is nothing here to suggest that the bringing of an *action at law*, with a jury trial, is in any way essential to the corporate interest. On the contrary, since the affidavits of the defendants state that the contract sued upon is oral, and that is not denied by plaintiff, there may be no cause of action upon which recovery may be had since in two of the defenses the Statute of Frauds is pleaded. If the Middleman-Shindel group has a cause of action, its rights will be fully protected in equity and its counsel compensated from any recovery and only from a recovery on behalf of the corporation, subject to the approval of the court. If there be no cause of action, the plaintiff corporation will not have that discovered in equity at its expense. As it was phrased in the dissenting opinion below: " One side should not be entitled to maintain an action in the name and at the expense of the corporation simply because the president happens to be allied with its interests." (273 App. Div. 469.)

The order of the Appellate Division should be reversed and that of Special Term affirmed, with costs to appellant in this court and in the Appellate Division. The question certified is answered in the affirmative.

LOUGHRAN, Ch. J., LEWIS, DESMOND, DYE and FULD, JJ., concur.

Order reversed, etc.