Desmond, J.
The question for decision is: when a contract between two corporations includes a general arbitration clause, may the president of one contracting party without *574 specific authorization from his directors commence an arbitration of an alleged dispute, when half of the directors of his corporation represent the other contracting party on his corporation’s board and presumably would not vote in favor of bringing the dispute before arbitrators? We could avoid answering that query by holding that it is for the arbitrators to answer, and thus not a proper basis for a court-granted stay of arbitration. The only issues a court may deal with on such a stay application are as to “ the making of the contract or submission or the failure to comply therewith ” (Civ. Prac. Act, § 1458; Matter of Kramer S Uchitelle, Inc., 288 N. Y. 467, 472; Matter of Western Union Co. [American Communications Assn.], 299 N. Y. 177) and “ all acts of the parties subsequent to the making of the contract which raise issues of fact or law, lie exclusively within the jurisdiction of the arbitrators ” (Matter of Lipman [Haeuser Shellac Co.], 289 N. Y. 76, 80). However, neither court below dealt with this part of the problem, so we address ourselves to the issue those courts did decide, that is, the authority of the president to bring on this arbitration.
Several years ago petitioner Paloma Frocks, Inc., made a contract with appellant Shamokin Sportswear Corp. under which the latter was to perform for Paloma certain operations involved in Paloma’s manufacture of dresses. Any dispute was to be determined by arbitration. The agreement was signed for Paloma by Harry Toffel, its president. George Bernstein, Shamokin’s president, signed for it. Toffel not only controlled Paloma but was and is an officer and director of Shamokin also, and his brother Philip Toffel as his nominee owned half of Shamokin’s stock. Shamokin had four directors: the two Toff els and George Bernstein and the latter’s nominee. In other words, ownership and control of Shamokin was half in Bernstein and half in the Toff els who controlled Paloma. Shamokin rendered some services to Paloma under the contract but the arrangement then came to an end and Shamokin has not since been active in business. Bernstein as president of Shamokin served on Paloma a demand that there be arbitrated a contention that Shamokin had not been paid the full compensation due it from Paloma for work on the dresses. Paloma countered with this Supreme Court proceeding in which it prayed for an order staying the proposed arbitration on the ground that it had never been authorized by Shamokin’s *575 directors. Bernstein, Shamokin’s president, filed an answering affidavit in which he admitted that the Shamokin directors had not acted in the matter and that a meeting of the Shamokin board would have been an “ idle gesture ” since the two brothers Toffel would not have voted in favor of arbitration of a claim against Paloma.
Special Term, on the ground that Bernstein as president had implied authority, denied the stay. The Appellate Division, however, thought that under the circumstances Bernstein had no power thus to act for Shamokin. The Appellate Division’s reliance for that conclusion was on Sterling Industries v. Ball Bearing Pen Corp. (298 N. Y. 483), but there are several important differences between this case and Sterling Industries. The first such difference is this: Sterling’s president asked his board’s permission to bring the suit but there was a tie vote which this court treated as a refusal by the directors of permission (see Rothman & Schneider v. Beckerman, 2 N Y 2d 493, and its analysis, p. 497, of the Sterling Industries case).
A more important difference between this case and Sterling Industries is that here Shamokin’s president is merely carrying out an existing agreement that all disputes under this contract would be submitted to arbitration. Shamokin’s directors agreed to that arbitration clause and authorized president Bernstein to sign the contract embodying it. They had thereby agreed in advance that Paloma-Shamokin controversies should go to arbitrators. Thus, when a dispute did arise the submission thereof by president Bernstein to arbitrators was a routine step in the performance of an authorized contract. It makes little difference whether we regard Bernstein’s authority as express or implied (see Twy effort v. Unexcelled Mfg. Co., 263 N. Y. 6, 9; Rosbrook, New York Corporation Manual, pp. 592, 593). Authorization of a corporation president to agree to a general arbitration clause amounts to an authorization to the president to carry on arbitrations of such disputes as may arise (see, generally, Alexandria Canal Co. v. Swann, 5 How. [U. S.] 83, 89; Gorham v. Gale, 7 Cow. 739, 744; Wood v. Auburn & Rochester R. R. Co., 8 N. Y. 160, 166). We do not suggest that the board of directors could not forbid a particular arbitration but there was no prohibition here. Even as to lawsuits, ‘1 Where there has been no direct prohibition by the board * * * the president has presumptive authority, in the discharge of his duties, to defend and prosecute suits in the name of the *576 corporation” (Rothman & Schneider v. Beckerman, 2 N Y 2d 493, 497, supra).
Appellant Shamokin is a Pennsylvania corporation but neither party asserts that Pennsylvania law differs from ours in any respect which would be important here.
The order of the Appellate Division should be reversed, with costs in this court and in the Appellate Division,- and the order of Special Term reinstated.
Chief Judge Coeway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Order reversed, etc.