Fkoessel, J. (dissenting).
The majority of the court is now holding that a minority stockholder, merely because he was president of a corporation, may now sue, upon the theory of implied authority and in the name of the corporation, the majority stockholders who are the two remaining directors. Such a decision in our opinion runs counter to the basic principles of corporate law and holds in effect that a corporation is to be managed by its president and not by its board of directors.
In three previous decisions, we passed upon the authority of the president (or secretary-treasurer who had all the powers normally devolving upon a president) to institute legal or arbitration proceedings, without first obtaining specific approval from the board of directors (Sterling Inds. v. Ball Bearing Pen *349 Corp., 298 N. Y. 483; Rothman & Schneider v. Beckerman, 2 N Y 2d 493; Matter of Paloma Frocks [Shamokin], 3 N Y 2d 572). In all those cases, however, the directors were evenly split and corporate management was thns deadlocked. In authorizing the secretary-treasurer to bring suit in Rothman, and the president to institute arbitration proceedings in Paloma Frocks, the unarticulated premise was that in a deadlock situation corporate management is paralyzed and the need for allowing the president to institute a corporate suit, especially against ‘ ‘ outsiders ’ ’, is often urgent.
In the instant case, the president of a corporation which has been inactive for some four years seeks to prosecute an action in the name of the corporation against the individual defendants, who were two-thirds owners and constituted a majority of the board of directors, and against the corporate defendant, of which he was president and one-third owner and in which he sold his interest to the individual defendants. The authority to prosecute such an action must be either (1) actual, (2) apparent or (3) implied. There can be no question of actual authority, since a majority of the board of directors are defendants and obviously opposed to the suit, and the corporate by-laws do not authorize a single officer to institute suit on behalf of the corporation. Nor can there be apparent authority, since (as we noted at page 490 in the Sterling case) no rights of outsiders or third parties are involved. Thus the authority, if any, must be implied, i.e., presumptive or prima facie authority by virtue of the office of president.
In finding such presumptive authority, Special Term relied principally on a quotation from the Rothman case (2 N Y 2d 493, 497, supra), reaffirmed in Paloma Frocks (3 N Y 2d 572, 575-576, supra), that “ Where there has been no direct prohibition by the board, then, it has been held, the president has presumptive authority, in the discharge of his duties, to defend and prosecute suits in the name of the corporation.” However relevant the absence of direct prohibition may be in a deadlock situation, it can hardly be decisive where the president has actual knowledge that a majority of the board of directors oppose the suit. To consider it decisive would be to exalt form above substance to a degree never countenanced by this court. There can never be implied authority in a president to bring *350 suit in the name and on behalf of a corporation where a majority of those entrusted by law with its management unquestionably oppose such action. This is especially so when the president seeks to use the corporation to sue, not outsiders, but those who constitute a majority of the board of directors.
The majority opinion states that “ it was for the purpose of protecting and preserving the corporate interest that prompted the president to institute this suit ”, and that he was not required to wait “ until such time as the board had affirmatively authorized commencement of suit ” (which obviously it would never have done), because the majority of the board “ had their own selfish interests to protect which were contrary to the interests of the corporation ”. But who is this corporation whose cause of action the majority of the court seek to preserve? It is three men, each of whom owns one third of the stock and each of whom is an officer and member of the board. If the two would withhold consent to this suit because of “ their own selfish interests ”, is it not equally apparent that the third is bringing suit for his own selfish interests? Who could possibly benefit from this action except plaintiff as the minority member of the corporation? It is perfectly obvious that it was his own personal selfish interests “ that prompted [him as] the president to institute this suit” on behalf of a corporation which has done no business whatsoever for several years.
To hold, under these circumstances, that the “ corporation is a separate, independent legal entity ” with rights of its own is to ignore the express mandate of section 27 of the General Corporation Law, to wit: “ The business of a corporation shall be managed by its board of directors ” and not by its president — and to close our eyes to stark reality. The president did not need a resolution from the board of this inactive corporation to know that he was not authorized to bring this action and, in prosecuting it in the face of the opposition of the board, the president was violating his duty as a. corporate officer.
As we noted at page 493 of the Sterling decision (supra), plaintiff’s proper remedy was a stockholder’s derivative suit. He was president and director of this corporation when all the acts of the two directors, of which he now complains, took place. He sold his interest in 10 active corporations, including defendant corporation, to the individual defendants for a sum approxi *351 mating half a million dollars, and the only apparent reason why his stock in plaintiff corporation was not purchased was that it was valueless. It seems clear that he is now seeking for his sole benefit to use plaintiff corporation as an instrumentality against the majority of stockholders and directors in order to siphon money from a corporation in which he sold his interest to one in which he still retains an interest, and which was dormant and without assets. What he would be barred by estoppel from complaining of in a stockholder’s action, he has been permitted to do by way of a “ president’s suit
Special Term also relied upon the fact that “ a course of conduct developed through the years * * * whereby Zaubler, as plaintiff’s president, acted as spokesman and directive head of the corporation in all its activities, including litigation.” But there is a basic distinction between suits, in the name of the corporation, against outsiders, and suits against insiders, especially where the insiders constitute a majority of the board of directors. In Rothman (supra, p. 499) we emphasized the fact that “ the defendants before us, complete strangers to the corporation and actually charged with converting a portion of its assets, should not be permitted to question his authority and thereby frustrate the action.” (Emphasis supplied.) And in Fanchon & Marco v. Paramount Pictures (202 F. 2d 731, 733) the Second Circuit Court of Appeals wrote: “ It may be agreed that a president may authorize normal litigation without thereby finding justification for an action against the single other stockholder which will obviously disrupt corporate activities until terminated and which is known to be opposed by one-half the board of directors. The contention relied on seems too farfetched to deserve extended consideration, Sterling Industries, Inc. v. Ball Bearing Pen Corp., 298 N. Y. 483”. (Emphasis supplied.)
In Rothman (supra) we distinguished the Sterling decision (supra) on two grounds: (1) the suit in Sterling was against insiders, and (2) the board, when requested to act in Sterling, refused, by way of a tie vote, to give the president permission to institute suit. Here, the suit, as in Sterling, is not only against insiders but against a majority of the board, and their refusal to authorize the action against themselves is as obvious as it can be. In Paloma Frocks (supra, p. 575) we distinguished *352 Sterling not only on the ground that permission had there been refused, but because of the “ more important difference ” that the directors had agreed in advance that corporate controversies should go to arbitration, and “ when a dispute did arise the submission thereof by president Bernstein to arbitrators was a routine step in the performance of an authorized contract.”
Not only are we unable to distinguish the instant ease from Sterling, but we feel it is far stronger. As we noted in Sterling (supra, p. 492): “ We have consistently held that section 27 of the General Corporation Law, which provides that the business of a corporation shall be managed by its board of directors, cannot be circumvented. [Citing cases.] ” By affirming here, we are, in effect, creating a further exception to our holding in the Sterling case, and are amending section 27 to read that the corporation shall be managed by its board of directors, except when one member of the board, who happens to be president, disagrees with the majority, in which case it shall be managed by the president. We cannot imagine a more drastic departure from basic principles of corporate law.
We would reverse the orders below, grant the motion to set aside the service of the summons and dismiss the complaint, with costs, and answer the certified question in the negative.
Judges Desmond, Fund, Van Voorhis and Burke concur with Judge Dye; Judge Froessel dissents in an opinion in which Chief Judge Conway concurs.
Order affirmed, etc.