JORGENSON, Judge.
These consolidated appeals arise from claims brought by investors against a bro *794 kerage firm and two of its employees for alleged fraudulent misrepresentations and omissions in connection with the purchase of securities. We affirm in part and reverse in part the trial court’s orders on motions to compel arbitration.
The following facts are relevant to our disposition of these appeals. In 1979, Steven and Susan Lipawsky opened a money market account, number 13381-06, with Prudential-Bache Securities, Inc. The arbitration clause in the agreement which the Lipawskys signed to open the account did not exclude federal securities law claims from its scope. Instead, the clause provided in pertinent part:
Any controversy arising out of or relating to my account, to transactions with or for me or to this agreement or the breach thereof, shall be settled by arbitration in accordance with the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect.
In 1982, the Lipawskys signed a second account agreement pursuant to opening trading account number 32-440771. The 1982 agreement included an arbitration clause. The clause contained exclusionary language and provided as follows:
Any controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof, and whether executed or to be executed within or outside of the United States, EXCEPT FOR ANY CONTROVERSY WITH A PUBLIC CUSTOMER FOR WHICH A REMEDY MAY EXIST PURSUANT TO AN EXPRESS OR IMPLIED RIGHT OF ACTION UNDER THE FEDERAL SECURITIES LAWS [emphasis added] ... shall be settled by arbitration in accordance with the rules then obtaining of either the American Arbitration Association or the Board of Governors of the New York Stock Exchange as I may elect.
In the first quarter of 1985, Lipawsky was solicited by Morris Morgentaler, an account executive, to open trading accounts on behalf of Lipawsky and his wife, Susan, U.S. Optical Frame Company, and U.S. Optical Money Purchase Pension Plan.[1] The corporate and pension plan accounts were separately numbered and titled. No supporting agreements, however, were executed for either account. In October, 1985, Lipawsky bought shares in Savin Corporation for all three trading accounts based upon alleged misrepresentations made to him by Morgentaler. None of the purchases or sales of the Savin stock occurred in the money market account covered by the 1979 agreement. Two months later, the shares were liquidated at a substantial loss.
As a result of the Savin transactions, the investors filed a multicount complaint against Prudential-Bache, Morgentaler, and William McCormick, the manager of the brokerage firm’s Miami office. Federal claims were alleged under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 111. Claims were also alleged under state securities law and common law. In response, Prudential-Bache filed a motion to compel the Lipawskys, the corporation, and the pension plan to arbitrate all claims except those asserted under the 1933 Act. After a hearing, the trial court entered an order compelling arbitration only as to the Lipaw-skys. Prudential-Bache appeals from the order in case number 86-1922. Prudential-Bache thereafter filed a motion to compel the Lipawskys to arbitrate their 1933 Act claims.[2] Following a hearing, the trial *795 court granted the motion and entered an order from which the investors appeal in case number 87-2717.
We are cognizant that the parties’ intentions are to be liberally construed concerning issues of arbitrability. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). We must, nevertheless, apply the same general principles of contract interpretation to arbitration clauses as would be applied to any other contractual dispute. Brick v. J.C. Bradford & Co., 677 F.Supp. 1251, 1254 (D.D.C.1987). It is hornbook law that, to be bound, one must be a party to a contract. There is no “arbitration” exception to this principle of law.
Of the four plaintiffs, only Steven and Susan Lipawsky executed joint account agreements with Prudential-Bache. While it does not follow that an obligation to arbitrate attaches only to the signatories, ordinary contract principles determine who will be bound by such a written agreement. Fisser v. International Bank, 282 F.2d 231 (2d Cir.1960). The Lipawskys’ 1982 agreement provided for arbitration of “[a]ny controversy arising out of or relating to my account, to transactions with or for me or to this Agreement or the breach thereof....” Relying upon Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), Prudential-Bache argues that the broadly worded arbitration clause requires the court to construe the phrase “transactions with or for me” as encompassing all stock transactions effected in the separate trading accounts for U.S. Optical Frame and U.S. Optical Money Purchase Pension Plan. While it is true that the foregoing construction would bind the corporation and the pension plan to arbitration, such an interpretation would imper-missibly create agreements where none had previously existed. See Kislak v. Kreedian, 95 So.2d 510 (Fla.1957) (contract is legal relationship contemplating agreement enforceable at law by two or more parties for doing or not doing some specific thing and must create legal obligations).
Prudential-Bache concedes that the corporation and the pension plan are separate legal entities and that it assigned and maintained separately numbered and denominated trading accounts for each of them. Although Steven Lipawsky is the principal officer and shareholder of the corporation and the trustee of the pension plan, there is nothing on the face of the joint account agreement or in the signatures to suggest that the agreement covered anything more than the Lipawskys’ personal account. There is utterly no evidence that Steven Lipawsky signed in either capacity or with authorization to bind either the corporation or the pension plan to arbitration. See Simpson v. Robinson, 376 So.2d 415 (Fla. 1st DCA 1979) (parties bound to arbitration provisions in contract, having executed agreement as corporate officers and “individually”), cert. denied, 386 So.2d 641 (Fla.1980). The brokerage firm, moreover, neglected to secure either a corporate resolution authorizing the creation of such accounts or properly executed articles of submission to arbitration which would be binding. See John W. Daniel & Co. v. Janaf, Inc., 169 F.Supp. 219 (E.D.Va.1958) (where board of directors adopted resolution referring to arbitration agreement and authorizing corporate officers to further the purpose of the agreement, act of president in submitting dispute to arbitration was proper), aff'd, 262 F.2d 958 (4th Cir.1959); Paloma Frocks, Inc. v. Shamokin Sportswear Corp., 3 N.Y.2d 572, 170 N.Y.S.2d 509, 147 N.E.2d 779 (1958) (where both corporate presidents signed contract with arbitration provision and record showed that both had been authorized to sign by respective boards, submission to arbitration was routine step in performance of authorized contract); 19 C.J.S. Corporations § 1065 (1940). As was the trial court, we are without authority “to go ahead and make a new contract” out of an arbitration clause which by its clear language refers to “my” account and “this” agreement and which binds only Steven and Susan Lipawsky. *796 We emphasize that this is not merely a case where Lipawsky signed agreements without a designation as agent. This is a case where there are no agreements whatsoever to support the corporate and pension plan accounts. The trial court correctly denied Prudential-Bache’s motion to compel the corporation and pension plan to arbitrate their claims.
The trial court erred in granting Prudential-Bache’s motion to compel arbitration with respect to the Lipawskys’ claim brought under section 12(2) of the Securities Act of 1933, 15 U.S.C. § 111. The 1982 joint account agreement contains exclusionary language providing for arbitration “except for any controversy with a public customer for which a remedy may exist pursuant to an express or implied right of action under the Federal Securities Laws.” All of the transactions complained of occurred in the account covered by the 1982 agreement, the plain terms of which preserved the Lipawskys’ right to a judicial forum. As a matter of contract law, the Lipawskys never agreed to arbitrate their federal securities law claims.[3] See Paine, Webber, Jackson & Curtis, Inc. v. Lucas, 411 So.2d 1369 (Fla. 5th DCA 1982) (arbitration could not be based on arbitration clause in commodity account where controversy, arose from separate cash fund account with no arbitration clause, even though both accounts involved same client and brokerage firm); see also Eugene W. Kelsey & Son v. Architectural Openings, Inc., 484 So.2d 610 (Fla. 5th DCA), rev. denied, 492 So.2d 1330 (Fla.1986) (arbitration provisions from one contract cannot be extended to separate contract between same parties unless parties expressly agree to do so).
We affirm the trial court’s order denying Prudential-Bache’s motion to compel arbitration on the part of U.S. Optical Frame and U.S. Optical Money Purchase Pension Plan. We reverse the trial court’s order requiring the Lipawskys to arbitrate their 1933 Act Claims and remand for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED FOR FURTHER PROCEEDINGS.

. The plaintiffs’ complaint alleges that account number 32-440771 was opened in 1985. In their briefs, however, all parties refer to the corresponding account agreement as having been executed in 1982. Whether the agreement was executed in 1982 or in 1985 is not germane to our analysis.

. The motion was based upon a recent Supreme Court opinion, Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987), which rejected much of the rationale of Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). The Supreme Court in Wilko held that 1933 Act claims were not arbitrable and that a claimant had an absolute right to litigate such claims. The Court in McMahon refused to extend Wilko to 1934 Act claims, but it did not expressly overrule Wilko. We need not add our views to the continuing debate over the viability of Wilko because the *795 instant appeals may be disposed of based upon fundamental principles of contract.

. Prudential-Bache contends that the Lipawskys are bound by the 1979 agreement to arbitrate their 1933 Act claims. The brokerage firm reaches this conclusion based upon theories of waiver of the "affirmative defense" of exclusionary language in the 1982 agreement and failure to repudiate the 1979 agreement. Prudential-Bache’s contention is without merit. At the hearing on the first motion to compel arbitration on the part of all plaintiffs, the Lipawskys specifically disclaimed the 1979 agreement as being utterly irrelevant to the proceedings. There is no basis in law or logic to suggest that the language of the relevant 1982 agreement must be pleaded as an affirmative defense to the irrelevant 1979 agreement.