[926 NYS2d 438]

CRANE, A.G., Appellant, v 206 WEST 41ST STREET HOTEL ASSOCIATES, L.P., Respondent, et al., Defendants.

First Department, June 23, 2011

**APPEARANCES OF COUNSEL**

*Herrick, Feinstein LLP*, New York City (*Raymond N. Hannigan, Ross L. Hirsch* and *Matthew D. Sobolewski* of counsel), for appellant.

*Mark D. Mermel*, Great Neck, for respondent.

**OPINION OF THE COURT**

McGuire, J.

The plaintiff in this foreclosure action, Crane, A.G., is owned by John Lucas, one of the 50% owners of the defendant, 206

West 41st Street Hotel Associates, L.P. (the Hotel). Specifically, Lucas owns Carroll Hotel 206 West 41st Street, LLC (Carroll), one of the two limited partners of the Hotel. The other limited partner, Morgan 206 West 41st Street Corporation (Morgan), is owned by Benjamin Soleimani. Carroll and Morgan each own 49.5% of the limited partnership interests of the Hotel and 50% of the shares in the general partner, Clifton Place Development Corporation (Clifton), the owner of the remaining 1% interest in the Hotel. Although the stockholders agreement between Carroll and Morgan provides for a board of directors consisting of Lucas and two designees of Morgan, paragraph 3 (c) specifies that any action of the board requires unanimous approval of the directors. Paragraph 3 (c) specifies that "[a]ll action by the Stockholders shall require the unanimous approval of the Stockholders." The Hotel acquired the real property it owns by borrowing the purchase price from Crane, executing and delivering to Crane a note and leasehold mortgage. The partnership agreement called for the loan and section 2.4, "Permitted Transactions," broadly authorizes transactions between the partnership and a partner or an affiliate of a partner.

■ *Sterling Indus. v Ball Bearing Pen Corp.* (298 NY 483 [1949]) is controlling in this case. Under *Sterling*, the deadlock between Lucas and Soleimani over whether Clifton should defend the foreclosure action against the Hotel requires the conclusion that Clifton had no authority to cross-move to vacate the alleged default and seek leave to file an answer (*see also Stone v Frederick*, 245 AD2d 742 [1997]; *L. W. Kent & Co. v Wolf*, 143 AD2d 813 [1988]; *Tidy House Paper Corp. of N. Y. v Adlman*, 4 AD2d 619 [1957]). Any other conclusion simply vitiates paragraph 3 (c) of the stockholders agreement. *1800Postcards, Inc. v Morel* (153 F Supp 2d 359 [SD NY 2001]) is not to the contrary as the shareholders agreement granted the 50% stockholder bringing suit full control over all aspects of the corporation and specified that the other 50% stockholder had "no control whatsoever" (153 F Supp 2d at 361).

To be sure, in *Sterling*, one of the two disagreeing shareholder groups sought to commence rather than defend an action on behalf of the deadlocked corporation and the Court's rationale included the "availab[ility] to the group in favor of instituting suit . . . the more appropriate remedy of a stockholder's derivative action" (298 NY at 491-492). The same is true in *Stone v Frederick*, *L. W. Kent* and *Tidy House*. However, the unavailability to a shareholder of the remedy of mounting a defense in the right of the corporation does not require a different conclu-

sion. After all, if the Lucas/Carroll decision that the foreclosure action should not be defended constitutes a breach of fiduciary duty, an action for a breach of that duty is a remedy available to Soleimani/Morgan (*Brunetti v Musallam*, 11 AD3d 280, 281 [2004]). Of course, a showing that the decision is unwise or inexpedient is not sufficient to establish a breach of that duty (*cf. Auerbach v Bennett*, 47 NY2d 619, 629 [1979]). The inadequacy of that remedy is not thereby demonstrated. Obviously, the Hotel will be out of business if Crane succeeds in this action. But even assuming that the demise of the Hotel as a viable entity is a necessitous prospect that ordinarily would warrant disregarding shareholder deadlock even when the underlying action is not one against "outsiders" (*Stone v Frederick*, 245 AD2d at 745), it should be of no moment here given that Soleimani, through Morgan, agreed to the provisions of section 2.4 of the partnership agreement.[1]

Defendant (through Soleimani, purporting to act on its behalf) advances a formidable argument that the power of attorney presented at the stockholders' meeting by the attorney for Lucas was a limited one that did not authorize the attorney to vote on the resolution proposing that the foreclosure action be defended. As the deadlock between Lucas/Carroll and Soleimani/Morgan is obvious, however, any defect in the power of attorney should be disregarded (*cf. Tidy House*, 4 AD2d at 621; *Schillinger & Albert v Myral Hats*, 55 Misc 2d 178, 179 [Civ Ct, NY County 1967]).

The dissent's arguments are unpersuasive. It devotes a paragraph to an account of efforts by Lucas and Soleimani, after Lucas threatened to commence a foreclosure proceeding, to buy out Soleimani's interest. I do not know whether the dissent's account is correct or whether the facts are disputed because I have not checked the record. And I have not checked because that account is plainly irrelevant to the issue of whether Soleimani has the authority to engage counsel and defend the foreclosure action.

The dissent's effort to distinguish *Sterling* begins with a paragraph reciting provisions of the limited partnership agreement and bylaws of Clifton. As the dissent appears to acknowledge, these provisions do not distinguish this case from *Sterling*. The dissent then plays its trump card, paragraph 3 (b) of the

---

1. As the dissent relies on an ostensible need to protect the existence of the Hotel, I will return to this subject below.

stockholders agreement between Carroll and Morgan. It states as follows: "Notwithstanding anything to the contrary contained in the By-Laws of the Corporation, the officers of the corporation, *other than Ben Soleimani,* shall not take any action except as approved by the Board of Directors" (emphasis added).[2]

■ This is an unremarkable provision in a stockholders agreement. Absent such a provision, the day-to-day management of Clifton would be a nightmare; to do anything would require the unanimous approval of the board. But because Soleimani can *act without the approval of the board,* it scarcely follows that he can act against the wishes of the other co-owner so as to override the immediately ensuing provision, paragraph 3 (c), stating that "[a]ll action by the Stockholders shall require the unanimous approval of the Stockholders." To the contrary, the dissent's trump card is easily overruffed for the reason given in *Sterling.* That is, just as "[a]ny actual or implied authority [the president of the corporation] may have had as president to commence this action was terminated when a majority of the board of directors . . . refused to sanction it" (*Sterling,* 298 NY at 490), so, too, Soleimani's actual authority to defend the foreclosure action was terminated when the stockholders refused unanimously to sanction it. The Court underscored this point at the end of its opinion when, quoting the dissenting opinion in the Appellate Division, it wrote that " '[o]ne side should not be entitled to maintain an action in the name and at the expense of the corporation simply because the president happens to be allied with its interests' " (*id.* at 493, quoting 273 App Div 460, 469 [1948]).

The dissent's next argument is based on the obvious fact that Lucas's authority to exercise his veto power as one of the two owners is not unlimited but is circumscribed by fiduciary duties. After a paragraph that makes this point, the dissent writes as follows:

> "Here, issues of fact exist as to the exact nature of the affiliation between plaintiff and Lucas, the shareholder opposed to defending the action, i.e., whether plaintiff is an affiliate of Lucas or simply his alter ego, and whether Lucas seeks to block the [Hotel] from defending the foreclosure to serve his own interests, rather than the [Hotel's] . . . Issues

---

2. In the immediately following sentence the dissent quotes a plainly irrelevant provision of the bylaws.

also exist as to the use made of loan proceeds that had been obtained to satisfy arrears on the subject mortgage and to buy out Soleimani's interest in the [Hotel]."

One fatal problem with the argument is that no argument based on these ostensible issues of fact is raised on appeal by respondent (i.e., Soleimani, purporting to act on behalf of the Hotel).[3] Thus, the dissent improperly relies on an argument of its own invention (see *Misicki v Caradonna*, 12 NY3d 511, 519 [2009] ["(w)e are not in the business of blindsiding litigants, who expect us to decide their appeals on rationales advanced by the parties, not arguments their adversaries never made"]).

█ A second fatal problem with this argument emerges more clearly when the dissent builds on it, stressing that the broad authority conferred by section 2.4 is not so unlimited as to license Lucas to breach his fiduciary duties. The dissent then writes that section 2.4 "does not permit [Lucas] . . . to breach his fiduciary duty to the partnership by taking an action in favor of the entity in which he holds an interest, to the detriment of the [Hotel]."[4] Lucas, of course, is seeking to advance his own interests in refusing to authorize Clifton to defend the foreclosure. It does not follow, however, that he is for that reason breaching his fiduciary duties. But the precise parameters of his fiduciary duties need not detain us. As we maintain—the dissent has no response—if he is breaching his fiduciary duties, Soleimani/Morgan have a remedy.

Furthermore, the dissent ignores the possibility that Soleimani is breaching his fiduciary duties in seeking to defend the foreclosure action, inexplicably focusing only on the possibility that Lucas is breaching his fiduciary duties by refusing to authorize a defense. For all the dissent knows, Soleimani might know that the Hotel does not have a viable or even a nonfrivolous defense to the foreclosure action. If so, the assets of the Hotel, Clifton or both will be wasted by defending against the action.

█ The dissent's final argument—that Soleimani is authorized to defend the foreclosure action to protect the existence of

---

3. Unquestionably, Crane, the plaintiff, is the lender, and Lucas unquestionably owns both Crane and Carroll. Thus, it is unclear why the dissent wonders, sua sponte, whether Crane is an affiliate or alter ego of Lucas.

4. To the extent the dissent believes the analogous provisions it quotes from the corporate charter in *Sterling* purported to authorize the directors of the corporation to breach their fiduciary duties to the corporation, we disagree.

the Hotel—finds some support in *Sterling*. The Court both rejected the argument that maintaining the action was proper because "the litigation presents an emergency or a critical situation" (298 NY at 492) and went on to note that the complaint alleged no facts "to indicate that its corporate existence is threatened or that its business will not continue normally" (*id.* at 493). But the Court did no more than suggest that, despite a disagreement between co-owners of an entity about whether an action should be commenced or defended, one owner's views might prevail in the event of "an emergency or a critical situation" in which the entity's existence is threatened. Even assuming there are cases in which it might be sensible to conclude that such an owner's views should prevail, this is not one of them.

Here, two sophisticated parties formed the Hotel pursuant to agreements that called for Lucas to provide all the financing and expressly authorized the financing to be provided by an affiliate (i.e., Crane) of a Lucas-controlled entity. Obviously, these sophisticated parties knew that there was a risk that the Hotel would not be a success and they agreed that "[a]ll action by the Stockholders [of Clifton] shall require the unanimous approval of the Stockholders." As the Court of Appeals has stated, "[f]reedom of contract prevails in an arm's length transaction between sophisticated parties . . . , and in the absence of countervailing public policy concerns there is no reason to relieve them of the consequences of their bargain" (*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 695 [1995]). Neither Soleimani nor the dissent point to any such countervailing public policy concern and none exists.

■ For these reasons, the cross motion should have been denied in its entirety. With respect to the motion for a default judgment, it properly was denied. Even when the motion is unopposed, the motion court must satisfy itself that the movant has satisfied the requirements of CPLR 3215. Here, the moving papers were defective (*see Beltre v Babu*, 32 AD3d 722 [2006]).

Accordingly, the order of the Supreme Court, New York County (Eileen A. Rakower, J.), entered February 23, 2010, which, insofar as appealed from, denied plaintiff's motion for a default judgment and granted defendant's cross motion for leave to interpose an answer, should be modified, on the law, the cross motion denied, and otherwise affirmed, without costs.

Acosta, J. (dissenting). Because I believe that under the facts of this case, the president of the hotel corporation had the

authority to engage counsel to defend the foreclosure action, I respectfully dissent.

In 2001, John Lucas (Lucas) and Benjamin Soleimani (Soleimani) partnered to acquire the long-term lease to real property located at 206 West 41st Street, New York, New York, for the purpose of developing, owning and operating a hotel known as "Hotel 41." Towards this end, they formed defendant 206 West 41st Street Hotel Associates, L.P. (the LP), which has two limited partners, Carroll Hotel 206 West 41st Street, LLC (Carroll), owned by Lucas, and Morgan 206 West 41st Street Corporation (Morgan), owned by Soleimani, each of which own 49.5% of the partnership interests of the LP. The general partner, Clifton Place Development Corporation (General Partner), owns the remaining 1% of the limited partnership interests of the LP. Lucas and Soleimani each own half the shares of the General Partner.

Plaintiff, Crane, A.G., which is owned by Lucas, provided all the financing for the LP. The LP defaulted on the note by failing to pay for interest that accrued in 2007. Crane demanded payment of the interest and advised that it would commence a foreclosure proceeding if payment was not made. In response, Soleimani offered to sell his interest in the LP to Lucas, and Lucas agreed.

The parties agreed to obtain financing from the RiverSource Life Insurance Company in the amount of $2,225,000 (RiverSource Loan), the proceeds of which would be used to pay Soleimani's buyout amount, plus the interest due on the mortgage. The RiverSource Loan closed on November 14, 2008. However, as a condition of closing, RiverSource required an undertaking letter from the LP that a certificate of occupancy (CO) for Hotel 41 would be put in place in 90 days. Neither a temporary certificate of occupancy nor a CO was ever obtained, the Buy Sell Agreement was not consummated, and the proceeds of the RiverSource Loan purportedly remained in escrow. Accordingly, monies owed to Crane were never paid.

Thereafter, Crane commenced a foreclosure action against the LP. The LP failed to answer the complaint or otherwise appear in the action, and Crane moved for a default judgment. Soleimani opposed, arguing that at a meeting of the two stockholders, Lucas voted against defending the action while Soleimani voted in favor of defending the action. Moreover, Soleimani argued that the default judgment motion was made prematurely. Plaintiff argues that the president of defendant's corporate

General Partner lacked the authority to engage counsel and defend the instant mortgage foreclosure action in disregard of a deadlocked vote of the General Partner's two shareholders, one of whom is the president and the other of whom is affiliated with plaintiff.

While the majority is correct that any actual or presumptive authority that a president of a corporation may have to undertake or defend litigation is generally terminated by such a deadlock (*see Sterling Indus. v Ball Bearing Pen Corp.*, 298 NY 483, 487 [1949]), the rule is inapplicable to the facts before us. "While the principles of law are clear with respect to maintenance of a suit by or on behalf of a corporation, the facts which bring those principles into play are not so evident on this record as to call for their automatic application" (*see 328 E. 56 St. Rest. v Polldon Rest.*, 39 AD2d 689, 691 [1972]).

First, section 2.1 ("Authority of the General Partner") of the Amended and Restated Agreement of Limited Partnership, dated as of September 2001 (the LPA), provides that the General Partner shall have the exclusive right to manage the LP, including the right to defend any litigation (§ 2.1 [b] [vii]). The bylaws of the General Partner provide in article III, section 2 that the "Board of Directors shall be responsible for the control and management of the business affairs, property and interests of the Corporation, and may exercise all powers of the Corporation, except as are in the Certificate of Incorporation or as expressly conferred upon or reserved to the shareholders." Article IV, section 5 thereof provides:

> "Officers of the Corporation shall, unless otherwise provided by the Board of Directors, each have such powers and duties as generally pertain to their respective offices as well as such powers and duties as may be set forth in these By-Laws, or may from time to time be specifically conferred or imposed by the Board of Directors. The President shall be the chief executive officer of the Corporation."

However, in contrast to *Sterling*, where the "circumstances of the organization of plaintiff corporation indicate[d] that the parties intended that the corporation should be managed by its board of directors and that the board should take no affirmative action if not sanctioned by a majority" (298 NY at 491), the Stockholders Agreement among Carroll, Morgan and the General Partner dated as the 6th day of September 2001 provides in paragraph 3 (b) in relevant part that "[n]otwithstanding

anything to the contrary contained in the By-Laws of the Corporation, the officers of the corporation, *other than Ben Soleimani*, shall not take any action except as approved by the Board of Directors" (emphasis added). Paragraph 10 ("Certificate of Incorporation: By-Laws") thereof provides that

> "[e]ach of the Stockholder [*sic*] agrees to consent to and approve any amendment of the Certificate of Incorporation or By-Laws of the Corporation which may from time to time be necessary or advisable in order to make any of the provisions of this Agreement, or any of the amendments thereto, valid and enforceable under the applicable laws of the State of New York . . . ."

Accordingly, unlike *Sterling*, where there was nothing to confer any authority on the part of the president to institute litigation without the consent of the board of directors, here, under the express provisions of the Stockholders Agreement, Soleimani had the power to act in his capacity as president without a resolution from the board of directors. Thus, the LPA, when taken together with the Stockholders Agreement and bylaws, gives Soleimani, as president of the General Partner, the right and authority to engage counsel to defend the foreclosure action. Second, even were I to accept the majority's position that Soleimani's authority, as president, to sue could have been rebutted by the board of directors or stockholders pursuant to the provisions of the Stockholders Agreement requiring unanimous consent for actions taken by either, that power must be used to serve the corporation's interests, not that of the individual stockholders. The "relationship between shareholders in a close corporation, vis-à-vis each other, is akin to that between partners and imposes a high degree of fidelity and good faith" which "may not be so easily circumvented" (*Brunetti v Musallam*, 11 AD3d 280, 281 [2004] [internal quotation marks and citation omitted]; *see also Sager Spuck Statewide Supply Co. v Meyer*, 273 AD2d 745, 748 [2000]). Similarly, "neither the board of directors nor any individual member or members thereof may exercise such authority in violation of, *inter alia*, fiduciary duties owed the corporation" (*TJI Realty v Harris*, 250 AD2d 596, 598 [1998]; *see also* Business Corporation Law §§ 717, 720).

Here, issues of fact exist as to the exact nature of the affiliation between plaintiff and Lucas, the shareholder opposed to defending the action, i.e., whether plaintiff is an affiliate of Lucas or simply his alter ego, and whether Lucas seeks to block

the LP from defending the foreclosure to serve his own interests, rather than the LP's. I find it curious that the majority asserts that I am inventing arguments not advanced by the parties while unabashedly proclaiming that a derivative action can be instituted, an argument never put forth by the parties. Unlike the majority, my arguments are in fact based on the record. The majority asserts that the issue of whether plaintiff is an affiliate of Lucas or simply his alter ego is an argument of my own invention, never advanced by respondent. This is incorrect. In respondent's affirmation in support of its cross motion for leave to file an answer, the LP specifically asserts that plaintiff Crane is Lucas' alter ego. Issues also exist as to the use made of loan proceeds that had been obtained to satisfy arrears on the subject mortgage and to buy out Soleimani's interest in the LP.

The majority believes that Lucas' potential conflict of interest is of no moment because Soleimani agreed to the provisions of section 2.4 ("Permitted Transactions") of the LPA. True, section 2.4 (b) provides that

> "[t]he fact that a Partner . . . is directly . . . interested in or connected with, any firm or corporation employed by the Partnership . . . from which the Partnership may borrow . . . shall not prohibit the Partnership from engaging in any transaction with such person, firm or corporation, and neither the Partnership nor the other Partner shall have any rights in or to any income or profits derived from such transaction by the Partner, person, firm or corporation . . . ."

However, the majority ignores that this authority is limited, requiring that "the terms of such transaction are not less advantageous to the Partnership than those obtainable from non-affiliated third parties." Thus, it is clear that while the LPA permits a partner to have a conflict of interest, it does not permit the partner, as a stockholder or director, to breach his fiduciary duty to the partnership by taking an action in favor of the entity in which he holds an interest, to the detriment of the LP. In contrast, the agreement in *Sterling* provided:

> " 'No contract or other transaction between the corporation and any other corporation shall be affected or invalidated by the fact that one or more of the Directors of this corporation is or are interested in or is a Director or officer or are Directors or offi-

cers of such other corporations, and any Director or Directors, individually or jointly may be a party to or parties to, or may be interested in any contract or transaction of this corporation, or in which this corporation is interested, and no contract, act or transaction of this corporation with any person or persons, firms or corporations, shall be affected or invalidated by the fact that any director or directors of the corporation is a party to or are parties to, or interested in such contract, act or transaction, or in any way connected with such person or persons, firm or association; *and each and every person who may become a director of this corporation is hereby relieved from any liability that may otherwise exist from contracting with the corporation for the benefit of himself or any firm, association, or corporation in which he may be in any wise interested*' " (298 NY at 487-488 [emphasis added]).

Lastly, I believe the motion court properly allowed Soleimani, as president of the General Partner, to interpose an answer on behalf of the LP to protect its existence and interest. That is, the facts allege that the corporate existence of the subject hotel is threatened and that its business will not continue normally. In contrast, in *Sterling*, the court held that "[n]o evidentiary facts are alleged to indicate that a crisis is at hand or that immediate or vital injury threatens plaintiff" (*id.* at 492) in that the complaint stated that plaintiff " '*was and still is* engaged in the business of selling and distributing articles of general merchandise,' " and that "while it allege[d] an exclusive agency to sell the pens of the corporate defendant, and that the contract has been breached, no *facts* [were] alleged to indicate that its corporate existence [was] threatened or that its business [would] not continue normally" (*id.* at 493).

These same issues of fact show a meritorious defense warranting denial of plaintiff's motion for a default judgment, and I would affirm Supreme Court's order denying plaintiff's motion for a default judgment and granting defendant's motion for leave to interpose an answer.

FRIEDMAN and DEGRASSE, JJ., concur with McGUIRE, J.; ANDRIAS, J.P., and ACOSTA, J., dissent in a separate opinion by ACOSTA, J.

Order, Supreme Court, New York County, entered February 23, 2010, modified, on the law, the cross motion denied, and otherwise affirmed, without costs.

---

Motion to dismiss appeal and for related relief denied.