ROTHMAN & SCHNEIDER, INC., Respondent, v. SAM BECKERMAN et al., Individually and as Copartners Doing Business under the Name of BECKERMAN & LERNER, Appellants.

First Department, February 14, 1956.

*Milton Kail* of counsel (*Jonick, Tannenbaum & Kail,* attorneys), for appellants.

*Herbert Cohen* for respondent.

BERGAN, J. The plaintiff is a close corporation all the stock of which is owned in equal shares by Isidor Rothman and William Schneider, who together organized it. For about fifteen years it has been engaged in the business of manufacture and sale of gold synthetic and semiprecious stone rings. Rothman holds the office of president; Schneider the office of secretary-treasurer. These two men and their wives are the only directors.

It is factually undisputed in the record before us, and established by affidavit, that it was the corporate custom not to hold director's meetings during many years of the life of the corporation, and for each of the owners to act " as equals and as partners " and to accept each other's authority. It was the practice for either officer to verify pleadings in litigation in which the corporation was involved.

On January 18, 1954, the two owners of the corporate plaintiff and the plaintiff itself entered into a written agreement which recited that the stockholders and directors had voted to dissolve the corporation and provided for the distributive shares of the two owners in the assets. Among other things Schneider was to take the fixtures and sample models of rings and the leasehold in which the business was being conducted. Other assets were to be divided in a manner not here material. Schneider was to operate the business formerly conducted by plaintiff.

The defendant Sam Beckerman is the son-in-law of Rothman. For some seven years he was employed as a salesman. The complaint alleges that during a portion of his employment for plaintiff he was in secret partnership with defendant Lerner in the same business in which plaintiff has been engaged, and that Beckerman converted sample models of jewelry designed and created by plaintiff, and used them together with Lerner in their copartnership.

The complaint is verified by Schneider and the institution of the action by the corporation was authorized by him. The defendants thus sued contend that the action is not properly maintained because its institution has not been sanctioned by the board of directors of the plaintiff. They moved to vacate the service of the summons and complaint on them, and to strike out the appearance of the attorney who instituted the action for plaintiff on the ground he was not authorized to institute or maintain it. The court at Special Term has denied this motion. We think it should have been denied and that the motion is correctly decided.

Appellants rely on *Sterling Inds.* v. *Ball Bearing Pen Corp.* (298 N. Y. 483) in their argument for reversal. That decision is distinguishable from the case before us in two important respects. In the first place there was there no '' presumptive or prima facie authority '' for the president of the corporation to institute that action (p. 490). On the contrary, the president there expressly asked authority of the board to institute the action and such authority was not given, the vote being tied (pp. 488, 489).

It can scarcely be thought that the holding of *Sterling Industries* is to mean that every time a lawsuit is instituted or defended by any corporation under any circumstances there must be a formal vote of authorization by the directors. The directors, of course, could delegate the authority to any officer or to an attorney to institute action as need be.

The course of management of corporate affairs over long periods and the sanction by corporate directors of the actual practice followed could together spell out authority by implication. Thus, in some of the cases relied on in *Sterling Industries* (p. 490) there was found to have been an implied authority vested in a corporate officer to retain counsel in corporate litigation. One rested on the prima facie authority of the president (*Twyeffort* v. *Unexcelled Mfg. Co.,* 263 N. Y. 6) ; another on the prima facie power of the president, plus the knowledge of various corporate officers, irrespective of the power of the president (*Potter* v. *New York Infant Asylum,* 44 Hun 367).

Here it is factually established in the record that the secretary-treasurer had acted for the corporation in the institution of actions and the verification of pleadings with adequate corporate sanction of the stockholders and that this course was followed for long periods. There seems thus to exist sufficient prima facie authority in the officer instituting the action to

survive the attack by defendants who are purported wrong-doers, are not themselves officers of the corporation, and have no interest in its internal management.

Their situation, therefore, differs in this respect also from the defendants in *Sterling Industries* whom the court treated, not as strangers to the corporation, but as organizers of the plaintiff itself and closely related to its affairs. In view of the failure of the board to vote the president authority there to institute the action any implied authority he may have had was deemed " terminated " (p. 490).

The second distinguishing element of this case is that in *Sterling Industries* the court left open as an exception to the rule of law it stated, certain emergency situations vital and critical to the corporation in which it is to be supposed that a corporate officer might institute an action (pp. 492, 493). We think this case would fall within that exception.

It seems to us also that the fact the corporation was to be dissolved and not continue in business, that the secretary-treasurer had acquired a special future interest through contract with the corporation in the models which are the subject of the action, are considerations which would lead to affirmance. The discussion of some similar criteria of exception to the rule of *Sterling Industries* (p. 493) seems relevant to this case.

The order should be affirmed, with costs.

FRANK, J. (dissenting). The question posed is whether the secretary-treasurer of a closely held corporation, without the consent of its board of directors and over the opposition of its president, can commence an action in the name of the corporation.

At the outset, it should be stated that if this plaintiff has been wronged and is entitled to recover, it is not without relief. The law provides a remedy in an appropriate action.

I believe that the appellants correctly rely on *Sterling Inds. v. Ball Bearing Pen Corp.* (298 N. Y. 483) as the controlling authority on the question. It is stated by the majority, however, that the *Sterling* case is distinguishable in two important respects. First, there was no " presumptive or prima facie authority " for the president to act in the *Sterling* case whereas here there is. Second, it is stated that the *Sterling* case left open an exception in that the rule does not apply to emergency situations vital and critical to the corporation and this case falls within that exception. The two propositions will be discussed seriatim.

I find no implicit, presumptive or prima facie authority in Schneider to commence this action. Parenthetically, the exception in the *Sterling* case, at best, refers to the corporate president. Schneider who initiated the action here does not hold that office.

The record discloses that Schneider, on behalf of the corporation, undertook to defend two actions brought *against* the corporation. Whether Schneider unilaterally or by consent undertook to defend two isolated lawsuits does not signify his authority to commence an action. Nor can comfort be found in the fact that no formal directors' meetings were held since 1947. Schneider and Rothman, with equal stockholdings and representation on the board, engaged daily in the business of the corporation. Their informal agreement on corporate policy and activity created no necessity for formal board resolution. That course of conduct, however, does not denote authority in one to act, as here, without the consent of the other.

The complaint charges, upon information and belief, that sample rings and models were converted by the defendants, designs copied, and then the models secretly returned.

On January 18, 1954, the final date before which the conversion is charged, Schneider and Rothman executed an agreement to dissolve the corporate plaintiff. The agreement evidences a merchandise and equipment inventory as of its date, which includes only sample models and merchandise then located in the premises and merchandise out on consignment only.

Although the agreement containing numerous paragraphs anticipates many contingencies, including the consequences of a patent infringement suit in which the corporation was a defendant, it does not expressly authorize Schneider to commence lawsuits on behalf of the corporation, nor does it give him sole authority to liquidate the corporation. On the contrary, with respect to the patent infringement action it provides that the parties " Will defend the said suit " and that each will " equally pay  *  *  *  all attorneys' fees." Another paragraph provides that: " Neither of the parties to this agreement will settle or compromise any claim or controversy *in favor of* or against the corporation unless by mutual consent of the party stockholders." (Emphasis supplied.)

It is significant that the contract makes no change in the corporate officers or directors. Rothman and his wife are still two of the four directors and he is still the president. To me the conclusion is inevitable that the agreement between the equal

stockholders negates any authority in Schneider to commence this action.

The General Corporation Law (§ 27) states, in substance, that the business of a corporation shall be managed by its board of directors and unless otherwise provided, a majority thereof shall constitute a quorum.

The papers before this court disclose a virtual concession that the corporate by-laws require that the control and general management of the corporation be conducted by a majority of the four directors. They do not authorize *in haec verba,* the commencement of any lawsuit by any officer on behalf of the corporation.

Section 29 of the General Corporation Law provides that even upon dissolution, in the absence of other designations by a court or by law, the directors acting by majority shall have full power to settle its affairs.

In the *Sterling* case (*supra,* p. 492), the Court of Appeals in reversing this court, stated: '' We have consistently held that section 27 of the General Corporation Law, which provides that the business of a corporation shall be managed by its board of directors, cannot be circumvented. [Cases cited.] The decision below in effect amends section 27 to read that the corporation shall be managed by its board of directors, *except in the case of deadlock when it shall be managed by any director who happens to be president.''*

I cannot concur with the attempt to distinguish the determination in the *Sterling* case (*supra*) because in that case, the president of the corporation expressly sought board authority to commence the action and the vote thereon by the directors culminated in a tie. In this case, the president opposes the institution of the action, and it is obvious that had the question been submitted to a vote at a board meeting the result would have been a tie. Nor does the action possess the virtue of commencement by order of plaintiff's president.

I find no merit in the suggestion that this case falls within the exception hereinbefore noted because an '' emergent or critical situation '' exists. As in the *Sterling* case (*supra,* p. 492) '' No evidentiary facts are alleged to indicate that a crisis is at hand or that immediate or vital injury threatens plaintiff.'' On the contrary, this corporation is in the process of dissolution. Its business can no longer be injured by unfair competition. Its good will is nonexistent and no value was placed thereon in the dissolution agreement.

The other cases cited in the majority opinion are distinguishable on the facts. The case at bar is factually analogous to *Voron & Chait* v. *Benguiat* (162 N. Y. S. 974, 975). In dismissing the complaint the Appellate Term stated: " if such authority is held to exist in the officers of a corporation, certainly the officer in whom it would be found would be the president as the chief executive officer, and not the secretary or the treasurer."

It is evident from the record that Schneider is competing with the defendants in his individual capacity.

The majority opinion states that the dissolution of the corporation and the special future interest of its secretary-treasurer are considerations which lead to affirmance. These very facts impel me to a contrary view. Is this action brought for the benefit of the corporation or for the personal interest of Schneider who is continuing the business as an individual? If the latter is the fact, he should not be privileged to sue in the corporate guise. It may well be that he is seeking to embarrass or stifle competition in this manner. Certainly, an " emergency or critical situation vital to the corporation " is not thus created.

The order of the court below should be reversed, the summons vacated, and the complaint dismissed.

BREITEL, J. P., BOTEIN and Cox, JJ., concur with BERGAN, J.; FRANK, J., dissents and votes to reverse in opinion.

Order affirmed, with $20 costs and disbursements to the respondent.