In the Matter of the Arbitration between PALOMA FROCKS, INC., Appellant, and SHAMOKIN SPORTSWEAR CORPORATION, Respondent.

First Department, June 19, 1956.

*Seymour J. Ugelow* of counsel (*Conrad & Smith,* attorneys), for appellant.

*Harold M. Foster* of counsel (*Benjamin, Galton & Robbins,* attorneys), for respondent.

RABIN, J. This appeal requires us to determine whether the president of a close corporation whose stock and directorate control are equally divided may, without consulting or obtaining the approval of the board of directors, institute on his own initiative an arbitration proceeding in the name of the corporation.

Respondent Shamokin Sportswear Corporation, a Pennsylvania corporation, inactive for some time, has four directors. The present conflict however is really between its president, George Bernstein, and Harry Toffel, its secretary. The other two directors are their respective nominees. Toffel is also president of, and controls, Paloma Frocks, Inc., the other corporation here involved.

In 1952, Paloma engaged Shamokin as its contractor to manufacture dresses. The contract, signed by Toffel for Paloma and Bernstein for Shamokin, contained a provision for the arbitration of any disputes before the American Arbitration Association. In 1956, Bernstein, purporting to act for Shamokin, and in his capacity as president, commenced a proceeding in the corporate name to arbitrate certain alleged claims arising out of the 1952 contract. Bernstein had no authorization either from the stockholders or directors to commence the arbitration. Nor did he seek such authority in view of the equally divided control. Bernstein admitted that it " would have been a most idle gesture."

Paloma moved to stay the arbitration proceeding on the ground that Bernstein had no authority to institute it and now appeals from the determination of the Special Term denying that motion.

It is clear that when Bernstein commenced this arbitration proceeding he did so knowing that it was against the wishes of 50% of the directors. He knew that he did not have the approval of the board of directors or a majority thereof — in fact he knew he could not get it. Essentially, therefore, this case is no different from *Sterling Inds. v. Ball Bearing Pen Corp.* (298 N. Y. 483) where it was held that a president did not have the right to institute an action in the name of the corporation after he had asked his board of directors for permission to do so and had been refused. As in that case, Bernstein here proceeded without corporate sanction.

Ordinarily the management of the property and affairs of a corporation is vested in its board of directors (*Sterling Inds. v. Ball Bearing Pen Corp., supra*). Except, therefore, in an unusual or extraordinary case, an officer should not be permitted to determine the corporate policy and action. The present case reveals no circumstances which could be deemed sufficient to except it from the general rule.

*Rothman & Schneider v. Beckerman* (1 A D 2d 154) relied upon by respondent, has a number of distinguishing factors which make it here inapplicable. It is an exception to the general rule. In that case the secretary-treasurer who instituted the action had prima facie authority to do so based upon prior custom. In addition, the court held the situation was urgent since it was important that immediate action be taken against a salesman who allegedly had joined a secret partnership competing with the plaintiff. There is no such urgency in the present case where the dispute is of long standing and is between the two principals of the corporation.

There is another aspect of the situation which may not be overlooked. If the president of a corporation is considered to have carte blanche, the right to institute actions in the name of the corporation without approval of the board of directors, the result would be to destroy to a large extent the protection which is sought by parties who engage in a corporate enterprise under an agreement that the stock and directorate control will be equally divided. Thus if one of the parties to the agreement were allowed to act independently and against the wishes of the other — as in this case — the very purpose of the agreement for equal control would be frustrated. To permit him to do so would in effect be to hold that the affairs of the corporation

" shall be managed by its board of directors, *except in the case of deadlock when it shall be managed by any director who happens to be president* " (*Sterling Inds.* v. *Ball Bearing Pen Corp.,* 298 N. Y. 483, 492, *supra*). Bernstein, when he engaged with Toffel for dual control of Shamokin and at the time he signed this agreement for arbitration, knew of his limited rights and he should not be permitted to enlarge those rights, particularly when he is not without remedy. An action for waste would not be precluded and there would be the right to the appointment of a receiver to enforce the corporation's contractual claim — which includes arbitration — if failure to appoint such receiver would result in the loss of assets to the corporation.

In the circumstances, we think Bernstein lacked the right to institute the arbitration proceeding and that it, accordingly, should have been stayed.

The order should be reversed, with $20 costs, and the arbitration proceeding stayed.

BOTEIN, J. P., COX, FRANK and VALENTE, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant, the motion granted and the arbitration proceeding stayed.