TIDY-HOUSE PAPER CORP. OF N. Y., Respondent, *v.* DAVID ADLMAN, Appellant.

First Department, December 10, 1957.

*Herman Mendes* of counsel (*Kugel, Berkeley & Kugel,* attorneys), for appellant.

*Seymour M. Liebowitz* of counsel (*Nachby & Liebowitz,* attorneys), for respondent.

RABIN, J. This action was instituted in the name of the corporation by its president, Shulman, against defendant Adlman, its vice-president, to recover $14,100 alleged to have been wrongfully withdrawn by the latter from the corporation's bank account. Shulman and Adlman each owns 50% of the stock of the corporation and control of the board of directors is equally divided between them.

The Special Term denied a motion to dismiss made by defendant who urges that Shulman, lacking approval of the board of directors, had no right to bring the action. Shulman bases his right to commence suit in the corporate name on two grounds: First, that as president, he had a presumptive right to do so, and secondly, that the affairs of the corporation were so conducted as to give him implied authority to initiate litigation.

The business of a corporation is managed by its board of directors (General Corporation Law, § 27). In *Sterling Inds.* v. *Ball Bearing Pen Corp.* (298 N. Y. 483) where the board of

directors was evenly divided, it was held that since the board refused to give its approval, a suit commenced by the president lacked legality. Factually the case before us differs from *Sterling* in that here approval by the board of directors was not formally requested. We do not think that fact essentially distinguishes this from the *Sterling* case. For it could hardly be expected that if approval of the board of directors were sought, Adlman, who controlled 50% of the board, would have authorized the action against himself. In that respect a similar situation existed in *Matter of Paloma Frocks (Shamokin)* (1 A D 2d, 640). We there held that even though approval of the directors was not sought the result was the same as though approval had been expressly refused. But we need not rest on the *Paloma* case for here the facts present a much stronger case for striking down this attempted suit by the corporation's president. In *Paloma,* the president commenced a proceeding against another *corporation* whose stock was controlled by his coequal director. In the present case the president seeks to sue his coequal director *individually.*

Respondent relies on Shulman's presumptive or prima facie authority to bring the action as president. The query then is whether such a presumption applies when the president seeks to maintain an action against one who has as much control over the plaintiff corporation as the president himself. We think not, because, as we said in *Matter of Paloma (supra,* pp. 642–643): " the result would be to destroy to a large extent the protection which is sought by parties who engage in a corporate enterprise under an agreement that the stock and directorate control will be equally divided. Thus if one of the parties to the agreement were allowed to act independently and against the wishes of the other — as in this case — the very purpose of the agreement for equal control would be frustrated. To permit him to do so would in effect be to hold that the affairs of the corporation ' shall be managed by its board of directors, *except in the case of deadlock when it shall be managed by any director who happens to be president'* (*Sterling Inds.* v. *Ball Bearing Pen Corp.,* 298 N. Y. 483, 492, *supra*)."

Shulman seeks to support his position by relying on *Rothman & Schneider* v. *Beckerman* (2 N Y 2d 493). In that case however there were distinguishing factors which make it inapposite here. They are set forth in Judge FULD's opinion (p. 499): " * * * following the agreement to dissolve the corporation, the president went into ' retirement,' leaving the entire management and operation of the company to its secretary-treasurer. His was the headship, the responsibility for the conduct of the

corporate business being left with him. Having in mind the realities of the situation, the courts below were fully warranted in concluding that the company's only active officer was authorized to institute and prosecute such a suit as this, and certainly the defendants before us, *complete strangers to the corporation* and actually charged with converting a portion of its assets, should not be permitted to question his authority and thereby frustrate the action." (Emphasis supplied.) It also appears that in the *Rothman* case an emergency situation existed requiring prompt legal action to protect the corporation's interests (see Judge BERGAN's opinion, 1 A D 2d 154, 157).

Apart from these differing features in *Rothman* it is interesting to note that an important distinction is made in that case — and for that matter in the *Sterling* case — between actions brought against so-called "insiders" and "outsiders". The presumption that the president may sue without approval of the board of directors has no force when he attempts to sue one who has equal control of the corporation with himself. Judge BERGAN clearly indicated that to be so when writing for this court in the *Rothman* case (*supra*, p. 156):

"There seems thus to exist sufficient prima facie authority in the officer instituting the action to survive the attack by *defendants who* are purported wrongdoers, *are not themselves officers of the corporation, and have no interest in its internal management.*

"Their situation, therefore, differs in this respect also from the defendants in *Sterling Industries* whom the court treated, *not as strangers to the corporation, but as organizers of the plaintiff itself and closely related to its affairs.*" (Emphasis supplied.)

Judge BERGAN's view is fortified by the opinion of Judge FULD in writing for the Court of Appeals in the same case when he gave — as one of the reasons for eliminating, as should be done here, the question of any "presumptive or prima facie authority in the president of a corporation qua president to institute litigation"—the fact that suit was brought against "insiders" (2 N Y 2d 493, 497). He likewise stressed that same distinction when he referred to those being sued in the *Rothman* case as "complete strangers to the corporation" (*supra*, p. 499). Therein lies the chief and telling distinction between this and the *Rothman* case.

The second ground urged by respondent, namely, that there was implied authority on the part of Shulman to institute this action likewise does not apply in a case such as this. In this respect reliance may not be placed on the *Rothman* case

for there the authority to sue was based upon the voluntary surrender, by the codirector to the secretary, of all active management of the corporation in the process of liquidation. It should again be noted that even in that case the action instituted by the secretary was not against a codirector but against an outsider. There can be no implied authority on the part of an officer of a corporation to sue one in equal control, any more than there can be such presumptive authority, for the reasons given above.

We conclude that on the authority of the cases heretofore decided in this court and the Court of Appeals the institution of this action by Shulman without approval of the board of directors cannot be sustained. This determination will not leave the corporation without adequate remedy, for its rights may be asserted in a stockholder's derivative action.

The order should be reversed and motion granted, with $20 costs and disbursements.

PECK, P. J., BREITEL, FRANK and McNALLY, JJ., concur.

Order unanimously reversed on the law, with $20 costs and disbursements to the appellant, and the motion granted, with $10 costs, and judgment is directed to be entered in favor of the defendant dismissing the complaint, with costs.