**COR MARKETING & SALES, INC., Plaintiff,**

v.

**GREYHAWK CORPORATION, Kelro Corp., and Douglas G. Scouten, Defendants.**

No. 96–CV–0130F.

United States District Court, W.D. New York.

Feb. 12, 1998.

Saperston & Day, P.C., Frank T. Gaglione, Buffalo, NY, for Plaintiff; Karen R. Kaczmarski, of counsel.

Rice, Reid, Broderick & Wattengel, Niagara Falls, NY, for Defendants Greyhawk Corp. and Scouten; Paul H. Reid, Jr., of counsel.

Miserendino, Celniker, Seegert & Estoff, P.C., Buffalo, NY, for Defendant Kelro Corp.; Jonathon D. Estoff, of counsel.

## DECISION and ORDER

FOSCHIO, United States Magistrate Judge.

### JURISDICTION

The parties to this matter consented to proceed before the undersigned on December 2, 1996. The matter is presently before the court on Plaintiff's motion for partial summary judgment, dated May 23, 1997, and Defendants Greyhawk Corporation and Scouten's motion to dismiss the complaint, dated December 5, 1997.

### BACKGROUND

Plaintiff, COR Marketing & Sales, Inc. ("COR"), a New York corporation, filed this patent infringement action on February 27, 1996. The action also asserted state causes of action for breach of fiduciary duty against Scouten, conspiracy to tortiously interfere with Plaintiff's business and for prima facie tort against Greyhawk, Kelro, and Scouten, conversion against Greyhawk, Kelro, and Scouten, fraud against Kelro and Scouten, and for a declaratory judgment against Kelro.[1] On the same day, COR filed a motion for a preliminary injunction with a temporary restraining order, along with a supporting memorandum of law and an attorney's affirmation. Scouten filed an answer to the complaint and an answer to the motion *pro se* on March 25, 1996. Plaintiff filed a second motion for a preliminary injunction, a memorandum of law, and a supplemental attorney affirmation on March 27, 1996. Kelro filed its answer to the complaint, including a counterclaim against COR, on March 28, 1996. On April 10, 1996, an answer was filed on behalf of Greyhawk and Scouten by Scouten's retained attorney. A reply to Kelro's counterclaim was filed by Scouten on April 29, 1996. A reply to the counterclaim was also filed by COR on July 9, 1996.

On June 24, 1996, a conference pursuant to Fed.R.Civ.P. 16(b) was held before the Hon. John T. Elfvin, District Judge. At that time, counsel for COR, Mr. Frank Gaglione, indicated that an interim settlement had been reached between the parties whereas the motion for preliminary injunctive relief would be generally adjourned, and a partnership would be formed amongst the parties in order to continue to function and manufacture and market the product at issue in the action pending a resolution. On July 15, 1996, COR filed a motion to enforce the interim settlement, stating that the parties had been unable to reach an agreement as to the terms and conditions of the operation of the partnership, and requesting that the court appoint a receiver to run the partnership during the pendency of this action. Responding affidavits were filed by Greyhawk, Kelro, and Scouten on August 2, 1996. On August 15, 1996, Judge Elfvin denied the motion, and directed that the parties appear before the court for the purpose of selecting and setting a date and time for a hearing on the preliminary injunction motion. The hearing was not held, however, and, on November 26, 1996, a consent to proceed before the undersigned was executed.

While the preliminary injunction motion remained pending, COR filed a motion for partial summary judgment on May 23, 1997, seeking summary judgment on its first claim for patent infringement, and permanently enjoining and restraining Defendants from infringing Plaintiff's patents, along with a supporting memorandum of law and a statement of undisputed facts. On December 5, 1997, Defendants Scouten and Greyhawk filed a motion to dismiss the complaint, claiming

---

1. The complaint initially also alleged these causes of action against Defendants The Guardhouse, Inc., Kenneth J. Blake, Timothy Snell, Lawrence Roberts, Francis White, and Jeffrey Burns, however these Defendants were dismissed pursuant to a stipulation and order approved by the undersigned on October 30, 1997.

that COR was not the owner of the patents at issue. On December 19, 1997, COR filed an affirmation in support of its motion. Oral argument on the motion was not deemed necessary.

For the reasons as set forth below, Defendants Scouten and Greyhawk's motion to dismiss the complaint is DENIED; Plaintiff's motion for partial summary judgment is GRANTED.

## FACTS

In 1990, COR's president, Francis W. Argy, employed the services of Defendant Scouten to develop the interior design of an improved fuel agitating device for an automobile's internal combustion engine .[2] A patent on this invention was issued by the United States Patent Office on December 3, 1991 as U.S. Patent No. 5,069, 191. A diesel version of this fuel agitating device was developed, and, on September 22, 1992, a second patent, No. 5, 148, 194, was issued by the United States Patent Office. These patents were issued solely in the name of Scouten. The financing for the development of the devices and for both patent applications came from Argy.

On July 25, 1991, Scouten and Argy formed COR, the Plaintiff corporation, for the purpose of marketing and selling the fuel agitating devices, with both Scouten and Argy having equal ownership interests. In January, 1994, Scouten introduced Argy to Kenneth Blake, who then joined COR as a marketing director, and was later named Vice President of Marketing and Sales. Blake subsequently introduced Argy to Kelro Corporation.

In order to obtain commercial financing to market these devices, COR was required to claim the patents as assets of the corporation. Accordingly, on July 1, 1994, at a special shareholders and directors meeting of COR, it was resolved that Scouten would assign his rights in both patents to COR conditioned on an agreement between Scouten and COR regarding compensation, and with the proviso that the patents would be returned to Scouten in the event that COR became insolvent or was no longer in business. See Exhibit 1, Defendants' Motion to Dismiss, dated December 5, 1997. Scouten, by way of a written assignment, subsequently assigned all rights, title and interest in both patents to COR. The assignment was recorded against the patents in the United States Patent Office in Reel 7095, Frames 0779, 0780. See Exhibit 1, Appendix of Exhibits in Support of Plaintiff's Motion for Partial Summary Judgment.

On February 3, 1995, COR obtained a commercial loan in the amount of $30,000 from Key Bank, granting Key Bank a security interest in the corporation's assets, including the patents. The loan was also personally guaranteed by Argy and Scouten.

According to COR, in March, 1995, allegedly without COR's authorization, Blake drafted and presented a marketing agreement to Kelro, naming Kelro as COR's exclusive marketing agent in the United States for the patented products. Kelro executed the agreement, and Blake signed the agreement on behalf of COR. The agreement was not shown prior to execution to either Argy or Scouten. Following its execution, Scouten signed the agreement as president of COR over Argy's objection, and over the objections of COR's attorney, John Papsidero, who recommended that certain provisions and amendments be made to protect COR's interest. See Exhibit 8, Appendix of Exhibits, Affidavit of John Papsidero, Esq. Kelro refused to modify the agreement, insisting that the executed agreement was binding. According to COR, Blake and Kelro represented that Kelro would be able to obtain at least $500,000 in loans or venture capital. However, no investment monies were forthcoming. According to Blake, investment and sales opportunities were unsuccessful because of Argy's "irrational behavior" in making disparaging and defamatory remarks and in his attitude that customers and investors needed Argy more than Argy needed them. See

---

**2.** The fact statement is taken from the papers filed in relation to Plaintiff's motion for summary judgment and Defendants Greyhawk and Scouten's motion to dismiss the complaint, along with the other relevant papers filed in this action.

Exhibit 3, Appendix of Exhibits, Answer filed by Kenneth Blake, dated March 27, 1996.

On May 1, 1995, Scouten sent a letter to Argy, withdrawing his patents from COR. According to Scouten, the assignment was conditioned on the execution of an agreement between Scouten and COR, and, as no agreement had been reached, Scouten considered the assignment invalid. *See* Exhibit 2, Defendants' Motion to Dismiss. On the same date, both Scouten and Blake submitted their resignations as officers and directors of COR.[3] On May 8, 1995, Scouten and Blake formed Greyhawk Corporation, formally incorporated in the state of Michigan, for the purpose of competing with COR.

According to COR, Defendants have manufactured, marketed, used and sold the patented products, under the names Turbo Flow, Turbo Tech and Aeratech without authorization from COR and in competition with COR, unlawfully infringing COR's United States patents. As such, COR claims that Defendants' conduct has prevented COR from marketing and selling the patented products.

## DISCUSSION

### 1. Motion to Dismiss the Complaint

#### A. Motion to Dismiss Based on New York Corporation Law

As an initial matter, in Defendants Scouten and Greyhawk Corp.'s motion to dismiss the complaint, Scouten and Greyhawk contend that the action must be dismissed as a fifty percent owner of a corporation may not cause the corporation to sue the remaining stockholder in a dispute between the two stockholders. In its reply, COR does not address this argument.

■ Under New York law, applicable to this action as COR is a New York corporation (Complaint at ¶ 1), the business of a corporation is to be managed by its board of directors. N.Y. Business Corporation Law § 701 (McKinney 1997). "By authorizing two shareholders constituting the owners of all shares of a corporation to serve as its only directors (Business Corporation Law § 702(a)), the Legislature has implicitly recognized 'the desire for equal control in some closely held corporations,' and to permit a deadlock to be remedied by an exercise of presidential power 'disregards fundamental rules of agency law.'" *Stone v. Frederick,* 666 N.Y.S.2d 294 (App.Div.3d Dep't.1997) (quoting *Sterling Industries v. Ball Bearing Pen Corp.,* 298 N.Y. 483, 84 N.E.2d 790 (1949)). As such, courts have held that "where there are only two shareholders each with a 50% share, an action cannot be maintained in the name of the corporation by one stockholder against another with an equal interest and degree of control over corporate affairs; the proper remedy is a stockholder's derivative action." *Stone, supra,* at 295 (quoting *Executive Leasing Co. v. Leder,* 191 A.D.2d 199, 594 N.Y.S.2d 217, 218–19 (1st Dep't.1993)). *See also L.W. Kent and Co., Inc. v. Wolf,* 143 A.D.2d 813; 533 N.Y.S.2d 119 (2d Dep't.1988) (where president and 50% shareholder initiates corporate lawsuit against other 50% shareholder, presumption of president's authority to initiate corporate lawsuit does not apply and appropriate avenue of relief is a derivative action); *Abelow v. Grossman,* 91 A.D.2d 553, 457 N.Y.S.2d 30 (1st Dep't.1982) ("action could not be maintained in the name of the corporation, where brought by one stockholder against another with an equal stock interest and degree of control over corporate affairs ... [t]he appropriate remedy in such a case is a stockholder's derivative action").

In this case, it is not disputed that both Argy and Scouten have equal ownership of COR. There is no assertion that, at the time he tendered his resignation as an officer and director of COR, Scouten also relinquished ownership of his shares of stock in COR. Thus, COR is prohibited, under the prevailing case law, from asserting an action in its own name against Scouten, a 50% shareholder. Nonetheless, the court does not agree with Scouten that the action should be dismissed against him. Rather, the court finds that the action should be converted to a shareholder derivative action.

■ In order to bring a derivative suit, a shareholder must make a demand on the

---

**3.** There is no evidence in the record that Scouten tendered his stock back to COR at the same time.

board of directors of the corporation to bring the suit. Fed.R.Civ.P. 23. 1. This rule is based on the policy that "the decisions of a corporation—including the decision to initiate litigation—should be made by the board of directors or the majority of shareholders." *Daily Income Fund, Inc. v. Fox,* 464 U.S. 523, 530, 104 S.Ct. 831, 78 L.Ed.2d 645 (1984). However, it is well settled that a court may excuse a failure to make a demand where the demand would be futile. *See, e.g., Lewis v. Curtis,* 671 F.2d 779 (3d Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 176, 74 L.Ed.2d 144 (1982). This is typically done where, as here, a director of the company is alleged to be a wrongdoer. *Wright and Miller,* Federal Practice and Procedure, § 1831, p. 111. However, that alone does not permit a finding of futility. Rather, the court must determine whether the composition and structure of the board of directors is such that the board could not reach an independent decision to pursue or not pursue the claims despite the director status of the wrongdoer. *Lewis v. Graves,* 701 F.2d 245 (2d Cir.1983).

▇ In this case, the board of directors initially consisted of both Argy and Scouten. Kenneth Blake was added to the board on July 1, 1994. At the time this complaint was filed, only Argy remained on the board, because of the resignation of both Scouten and Blake, although Scouten remained a 50% shareholder. It is safe to presume that, if Argy had made a demand while Scouten and Blake remained on the board, such a demand would have been futile as Blake was aligned with Scouten and Scouten would never agree to initiate a lawsuit against himself, *See Tidy–House Paper Corp. of New York v. Adlman,* 4 A.D.2d 619, 168 N.Y.S.2d 448 (1st Dep't.1957), and that, following Scouten's and Blake's resignation, any demand could not have been considered as Argy would have

been the only remaining board member and thus unable to act. *See* N.Y. Business Corp. L. § 707 (McKinney 1986) (majority of board required for quorum).[4] Thus, the court finds that, based on the facts alleged in the complaint, despite the absence of a demand to the board, the complaint sufficiently alleges the requisites of a derivative action, and the action should properly be converted to that of a shareholder's derivative action. *See Ono v. Itoyama,* 884 F.Supp. 892, 899 (D.N.J. 1995), *aff'd* 79 F.3d 1138 (3d Cir.1996) (action by one 50% shareholder in the name of the corporation against the other 50% shareholder properly converted to a shareholder derivative action, applying New York law, where demand on board would have been futile).

▇ The court further finds that COR should be aligned as a plaintiff in this derivative action. In derivative actions, the general rule is that corporations should be aligned as plaintiffs since they are the real parties in interest. *Duffey v. Wheeler,* 820 F.2d 1161, 1163 (11th Cir.1987); *Cohen v. Heussinger,* 1994 WL 240378 at *2 (S.D.N.Y.1994). As this case is comparable to one where management is deadlocked and one faction brings suit, the court concludes that the corporation cannot be viewed as adverse to the plaintiff, and that COR should be aligned as a plaintiff. *Id.* The caption of this action should be amended, therefore, to name as plaintiffs, Francis W. Argy and COR Marketing & Sales, Inc.

### B. *Motion to Dismiss Based on Ownership of Patent Rights at Issue*

Defendant Scouten and Greyhawk have also moved to dismiss the complaint on the ground that COR never acquired the ownership of the patent rights at issue in this case, and, as such, Scouten and Greyhawk have not infringed these patents by their actions

---

4. Given that Blake, a former Defendant in this action, was aligned with Scouten and Kelro, such a request would have been equally futile even if Scouten's and Blake's resignations were found to be ineffective as a breach of their fiduciary duty to the corporation. *See Zeltner v. Henry Zeltner Brewing Co.,* 174 N.Y. 247, 66 N.E. 810, 812 (1903) (directors cannot resign "if the immediate consequence would be to leave the interests of the corporation without proper care

and protection") (quoting Morawetz on Corporations (Vol. I § 563)). *See also 7th Sense, Inc. v. Liu,* 220 A.D.2d 215, 631 N.Y.S.2d 835 (1st Dep't.1995) (holding that defendant's resignation as an officer and director of corporation did not relieve defendant of fiduciary obligations or liabilities to corporation as an officer and director when defendant misappropriated company's trade secrets obtained by defendant during his employment).

in manufacturing, marketing, and distributing the fuel agitator devices which are the subject of these patents.[5] Specifically, Scouten claims that the assignment of the patents was conditioned upon the execution of an agreement between Scouten and COR, and that, as such agreement was never reached, the assignment was not effectively delivered to COR. COR asserts that Scouten should be estopped from denying COR's ownership of these patents as the assignment was validly recorded in the United States Patent and Trademark Office and that COR, Argy, and Scouten obtained financing from Key Bank in COR's name based on COR's ownership of these patents, and pledging these patents as security for the loan.

█ Patents, like other personal property, may be conveyed from the inventor to others. *FilmTec Corp. v. Allied Signal, Inc.*, 939 F.2d 1568, 1572 (Fed.Cir.1991). Pursuant to 35 U.S.C. § 261, the patent statute governing assignments:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing ... An assignment, grant, or conveyance shall be void as against any subsequent purchaser or mortgagee for a valuable consideration, without notice, unless it is recorded in the Patent and Trademark Office within three months from its date or prior to the date of such subsequent purchase or mortgage.

35 U.S.C. § 261.

Scouten asserts that the resolution from the minutes Special Meeting of Shareholders and Directors, dated July 1, 1994, purporting to assign Scouten's patent rights to COR, constitutes an agreement of which a condition was not fulfilled, and that, as such, the assignment of Scouten's patent rights was void *ab initio*. Further, Scouten, conceding that the corporate note signed to obtain financing from Key Bank pledged the patent rights as security on behalf of the corporation, contends that the agreement signed with Key Bank guaranteed the note both on

behalf of the corporation and personally, and that, as such, the patent rights were available as security to Key Bank either through COR or through Scouten personally, and thus Scouten should not be estopped from denying COR's ownership rights in the two patents.

The resolution adopted at the Special Meeting of Shareholders and Directors on July 1, 1994 stated as follows:

> RESOLVED: That the officers of the corporation be and hereby are authorized to accept the ASSIGNMENT OF PATENT from DOUGLAS G. SCOUTEN to the CORPORATION in accord with the form of assignment presented to this meeting and to attach an executed ASSIGNMENT OF PATENT to the minutes of this meeting; and it was further

> RESOLVED: That the ASSIGNMENT is conditioned upon the execution of an agreement between the ASSIGNOR and the CORPORATION regarding consideration and also the return of the PATENT to DOUGLAS G. SCOUTEN in the event that the corporation becomes insolvent or no longer in business.

Minutes of July 1, 1994 Special Meeting of Shareholders and Directors of COR.

Scouten claims that no agreement was ever reached between the Assignor, Scouten, and the Corporation, COR, and that, as such, the transfer of patent rights was invalid. The court disagrees.

█ Minutes of a meeting of a corporation's board of directors or shareholders do not constitute an assignment of legal title in patents from an assignor to a corporation. *See Gaia Technologies, Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 779 (Fed.Cir. 1996). As stated in *Gaia Technologies*, "these minutes, at most, are a memorialization of an agreement" for an action to take place "some time in the future," and "[s]uch an agreement to assign is not an assignment and thus [does] not vest legal title." *Gaia Technologies, supra*, at 779. Thus, the court

---

**5.** While Greyhawk and Scouten filed their motion as a motion to dismiss, the motion references certain documents outside of the pleadings. As the motion to dismiss was filed in response to Plaintiff's motion for summary judgment, the court will convert the dismissal motion to a motion for summary judgment and consider the documents and other submissions in deciding this motion.

finds that the minutes from the July 1, 1994 shareholders and directors meeting did not form a contract which was subject to a further agreement between Scouten and COR.

The actual assignment which was filed in the United States Patent and Trademark Office stated as follows:

> NOW, THEREFORE, in consideration of the sum of one dollar ($1.00), the receipt of which is hereby acknowledged, and other good and valuable consideration, I, DOUGLAS G. SCOUTEN, by these presents to sell, assign and transfer unto the said COR MARKETING AND SALES, INC., the entire right, title and interest in and to the said Letters Patents aforesaid; the same to be held and enjoyed by the said COR MARKETING AND SALES, INC., for its sole use and behoof, and for the use and behoof of its legal representatives and assigns, to the full end of the term for which said Letters Patents are granted, as fully and entirely as the same would have been held by me had this assignment and sale not been made.

Assignment of Patent, dated July 1, 1994.

This assignment was recorded in the United States Patent and Trademark Office on August 11, 1994 at Reel 7095, Frame 0779. Thereafter, during the last quarter of 1994, Nancy J. Joseph, Assistant Vice President of Key Bank of New York responsible for Key Bank's commercial loan department in Niagara Falls, New York, was approached by COR and advised by COR principals that COR was seeking financing for manufacturing and marketing the patented products. Appendix of Exhibits, Exhibit A, Tab 9, Affidavit of Nancy J. Joseph, dated February 1, 1996. In reliance on representations of COR officers, including the fact that COR was the owner of all right, title and interest in the two United States patents at issue, on February 3, 1995, Key Bank approved a $30,000 demand loan to Cor, secured by all corporate assets, including the patents, and personally guaranteed by Argy and Scouten. Joseph Affidavit, at ¶ 4. According to Joseph, removal of the patents from COR would be a specific violation of Key Bank's lien, and, as of the date of the affidavit, Key Bank contin-

ued to have a lien on the assets, including the patents. Joseph Affidavit, at ¶¶ 7–9.

■■■ It is clear that the mere fact that an assignment was recorded in the United States Patent and Trademark Office does not, without more, prove that a valid assignment actually took place. *See* 37 C.F.R. § 3.54 (1995) ("The recording of a document ... is not a determination by the United States Patent and Trademark Office of the validity of the document or the effect the document has on the title to an application, a patent, or a registration."). However, the court finds that the evidence supports a finding that the assignment executed by Scouten was valid. First, the language in the assignment expressly states that the assignment was given for good and valuable consideration. There is no clause stating that the assignment was to be conditioned on a future agreement to be negotiated or any clause relating to forfeiture of the assignment. Second, following the execution of the assignment, Scouten and Argy conducted business through COR regarding the manufacturing and marketing of the patented products. It was clearly Scouten's intent to sell the patented products through COR, and indeed, a marketing director, Kenneth Blake, was hired for that sole purpose. Finally, Scouten clearly and expressly represented to Key Bank that the patents at issue were included in COR's assets, and permitted Key Bank to file a lien against the patents as Cor's primary assets, and permitted Argy to file a security interest against the patents based on the financing provided by Argy in the development of the patents. Scouten's argument that, because of his personal guarantee to Key Bank, it was irrelevant whether the patents were in COR's name or Scouten's name is without merit as it is clear that the financing was obtained from Key Bank because of the express representation that the patents were COR assets.

This undisputed evidence leads the court to the conclusion that the assignment of the patents, recorded in the United States Patent and Trademark Office, was valid. The fact that Scouten's and Argy's business relationship later turned sour is irrelevant to this conclusion. The intent at the time of the

execution and filing of the assignment was to assign all of Scouten's rights in the patents to COR. Such an assignment was valid. Therefore, there is no basis to dismiss COR's lawsuit on the ground that COR never validly obtained the rights to Scouten's patents.

 Scouten also claims that, even if the assignment was valid, he executed a valid assignment of the patent rights from COR to Scouten on April 28, 1995, an assignment which was later recorded in the United States Patent and Trademark Office. This argument must also fail. According to the minutes of the July 1, 1994 shareholders and directors meeting, the purpose of the meeting was, in part, to amend the by-laws and to enlarge the Board of Directors to three persons. At the meeting, Kenneth Blake was elected to the board, and he accepted the election. It was further resolved that "any policy decisions affecting the corporation must be by unanimous vote of the directors." Minutes of Special Shareholders and Directors Meeting, dated July 1, 1994, at p. 2. The court finds that a decision to reassign the patent rights owned by COR, effectively stripping the corporation of its main assets and dooming the corporation to certain failure, was most certainly a policy decision affecting the corporation. Yet, there is no evidence that Argy, Blake, and Scouten unanimously approved the reassignment of the patent rights to Scouten. Rather, the undisputed evidence shows that, on May 1, 1995, by a letter sent to Argy, Scouten unilaterally withdrew the patents from COR, stating that the condition discussed at the July 1, 1994 shareholders and directors meeting for assigning the patents was not met. *See* Exhibit 2, Scouten and Greyhawk Motion to Dismiss.

Under the New York Business Corporation Law, Scouten exceeded his authority as President of COR and as a member of the Board of Directors by his unilateral act. Section 715 of the Business Corporation Law states that all officers, as between themselves and the corporation, shall have such authority and perform such duties in the management of the corporation as may be provided by the by-laws, or to the extent not so provided, by the board. N.Y. Business Corporation Law § 715 (McKinney 1986). The Minutes of the Shareholders and Directors Meeting of July 1, 1994, approved by the Board, clearly amended the by-laws to state that a unanimous vote by the board was required for any policy decisions affecting the corporation. As stated above, the transfer of COR's main asset is clearly a policy decision affecting the Board, and it is undisputed that Scouten did not have unanimous approval to transfer the patent rights properly assigned to COR. Further, under Business Corporation Law § 909(a), a disposition of substantially all of the assets of a corporation if not made in the usual or regular course of the corporation's business is authorized only by a two-third vote of the shareholders. N.Y. Business Corporation Law § 909(a) (McKinney 1986). The disposition of a sole significant asset of a corporation can be characterized as "unusual and extraordinary." *Vig v. Deka Realty Corp.,* 143 A.D.2d 185, 531 N.Y.S.2d 633, 634 (2d Dep't.1988). Therefore, the reassignment of the patent rights from COR to Scouten required a two-thirds vote of shareholders pursuant to Business Corporation Law § 909(a), a requirement that Scouten clearly did not meet.

As such, Scouten's unilateral reassignment of the patent rights from COR to Scouten clearly exceeded the scope of his authority as president and director of COR. The fact that the assignment was later filed in the United States Patent and Trademark Office is irrelevant as the recording of a document is not a determination by the United States Patent and Trademark Office of the validity of the document or the effect the document has on the title to a patent. 37 C.F.R. § 3.54 (1995).

The court therefore finds that Scouten's purported assignment of patent rights from COR to Scouten is invalid, and that title to the patents is properly in COR.

### 2. *Plaintiff's Motion for Summary Judgment*

Plaintiff has moved for partial summary judgment on its First Claim for patent infringement on the ground that the two patents at issue in this case belong to COR, and that Defendants, through their actions in manufacturing, distributing, and marketing

the patented products, without authorization, infringed COR's patents. Defendants' argument that the patents were properly reassigned to Scouten and thus not COR's property was deemed without merit as discussed above. Defendants have not contended that the products which it was manufacturing and distributing were not the patented products at issue.

 The right of a patentee to a remedy for patent infringement is created by the patent statute, which provides that "[a] patentee shall have remedy by civil action for infringement of his patent." 35 U.S.C. § 281 (1994). The term "patentee" includes "successors in title to the patent." 35 U.S.C. § 100(d) (1994). The test for patent infringement contains two elements, first, the scope of the claim must be ascertained from the language of the patent; second, after the inquiry it must be determined that the accused product incorporates the patented claims. *Stein Industries, Inc. v. Jarco Industries, Inc.*, 934 F.Supp. 55, 56–57 (E.D.N.Y.1996). To establish literal infringement, each of the elements set forth in a patent claim must be present in accused product or process. *Environetics v. Millipore Corp.*, 923 F.Supp. 344, 346 (D.Conn. 1996). *See also Uniroyal, Inc. v. Rudkin–Wiley Corp.*, 837 F.2d 1044, 1054 (Fed.Cir. 1988) (stating that a patent claim is literally infringed when each element of the claim is found in the accused product).

 It is not disputed that, on May 1, 1995, both Scouten and Kenneth Blake resigned their positions at COR. It is also not disputed that, on May 8, 1995, Greyhawk Corp. was formally incorporated in the State of Michigan for the purpose of directly competing with COR. Since that time, Defendant Kelro Corp. has been selling COR's inventory, and distributing products embodying the claims of the patents belonging to COR.[6] Plaintiff's Statement of Undisputed Facts, dated May 20, 1997, at ¶ 33. Further, Scouten and Greyhawk are promoting, using, and selling the patented products, under the

names Turbo Flow, Turbo Tech, and Aeratech without authorization from COR, and in infringement of COR's patents. Plaintiff's Statement of Undisputed Facts, at ¶¶ 33, 36–37.

As Defendants have not disputed that they are manufacturing, marketing and promoting the patented products, Plaintiff has shown, based on the undisputed facts, that Defendants are literally infringing COR's patents. Therefore, Plaintiff is entitled to summary judgment on its First Claim for Relief for patent infringement against Defendants.

 Plaintiff also seeks a permanent injunction enjoining Defendants from manufacturing, marketing or distributing its patented products without authorization. Following a finding of infringement, the court "may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. As it has been found that Defendants have openly and actively marketed and sold the infringing devices, the court finds that such an injunction is warranted.

### CONCLUSION

Based on the foregoing, Defendants' motion to dismiss the complaint (Doc. # 43) is DENIED. Plaintiffs' motion for summary judgment and for a permanent injunction (Doc. # 38) is GRANTED. Plaintiff's motion for preliminary injunction (Doc. # 15) and a temporary restraining order (Doc. # 2) is DISMISSED as moot. Plaintiff is directed to provide the court with a proposed order granting injunctive relief within fifteen (15) days of this Decision and Order. Counsel for the parties are further directed to appear before the court on April 6, 1998 at 4:00 p.m. to schedule further proceedings in this action.

SO ORDERED.

6. *Kelro Corp. did not respond to Plaintiff's summary judgment motion, and Scouten and Greyhawk responded by filing a motion to dismiss. None of the Defendants filed a Statement of* Undisputed Facts pursuant to Local Rule 56, Local R.Civ.P. 56 W.D.N.Y., and as such, the facts contained with Plaintiff's Statement of Undisputed Facts are deemed to be admitted.